631 A.2d 1014

COMMONWEALTH of Pennsylvania,

v.

Gary BROWN, Appellant.

Superior Court of Pennsylvania.

Argued July 21, 1993.

Filed Sept. 20, 1993.

588

Carmen F. Lamancusa, New Castle, for appellant.

William M. Panella, Dist. Atty., New Castle, for Com., appellee. (submitted)

Before CAVANAUGH, BECK and CERCONE, JJ.

BECK, Judge:

This case requires us to decide whether and to what extent a trial court may take judicial notice of a blood testing laboratory's compliance with the requirements set forth in the Motor Vehicle Code, 75 Pa.C.S.A. § 1547(c). We affirm.

■ Appellant was stopped by police for investigation of a traffic violation.[1] After speaking with appellant, the officer requested that he perform several field sobriety tests, one of which, the officer testified, appellant failed twice. The officer thereafter transported appellant to a local hospital and requested that his blood be tested for the presence of alcohol. The results of that test were admitted into evidence at trial and formed the basis of appellant's conviction under 75 Pa. C.S.A. § 3731(a)(4), driving with a blood alcohol level of .10% or above. Appellant claims that the Commonwealth did not lay a proper foundation for admission of the test results.

In any DUI proceeding where blood, breath or urine tests are to be utilized, the Commonwealth is bound by statute to establish the validity of the tests. The law requires that:

> In any summary proceeding or criminal proceeding in which the defendant is charged with a violation of section 3731 or any other violation of this title arising out of the same action, the amount of alcohol or controlled substance in the defendant's blood, as shown by chemical testing of the person's breath, blood or urine, which tests were conducted by qualified persons using approved equipment, shall be admissible in evidence.

> \* \* \* \* \* \*

> Chemical tests of blood or urine shall be performed by a clinical laboratory licensed and approved by the Department of Health for this purpose using procedures and equipment

1. Appellant challenged the propriety of the traffic stop at a pre-trial motion to suppress and, after denial of the motion, preserved that challenge for appeal. Our review of the issue leads us to the clear conclusion that the stop was reasonable and lawful in light of what the officer observed and we therefore affirm the ruling of the suppression court. See Commonwealth v. McElroy, —— Pa.Super. ——, 630 A.2d 35 (1993).

prescribed by the Department of Health. For purposes of blood and urine testing, qualified person means an individual who is authorized to perform those chemical tests under the act of September 25, 1951 (P.L. 1539 No. 389), known as "The Clinical Laboratory Act."

75 Pa.C.S.A. § 1547(c)(2).

The Clinical Laboratory Act sets forth a series of rules related to the operation of testing facilities, including minimum education and work experience requirements for the laboratory's supervisor, permit application requirements, and Department of Health rights of inspection. It also vests in the Department of Health the power to adopt rules and regulations governing testing procedures. *See* 35 Pa.S.A. § 2151 *et seq.*

In this case, the Commonwealth offered the results of appellant's blood test with very little foundational support. After the prosecutor offered the test result as evidence of appellant's intoxication,[2] appellant objected to its admission because it was not made in compliance with § 1547(c)(2). The prosecutor then asked the court:

[ASSISTANT DISTRICT ATTORNEY]: We'd request that judicial notice be taken that St. Francis is an approved laboratory.

THE COURT: We will take judicial notice that they have been for many years an approved laboratory for these purposes.

---

**2.** Appellant also claims that the copies of his test results, offered by the Commonwealth without the presence of the laboratory's custodian of records, were not properly admitted as required by statute. We disagree. The law permits the use of copies of medical records to be proved as to foundation, identity and authentication without any preliminary testimony, where the records are certified in a manner consistent with the statute. It also permits a health care facility to forward copies of original records to the party serving a subpoena for such records and, where certified by the facility's custodian of records and duly notarized, permits the copies of the records to be offered in court in lieu of the custodian's personal appearance. *See generally* 42 Pa. C.S.A. §§ 6151 and 6152. Our review of the record convinces us that the Commonwealth satisfied all of the requirements of the statute.

Appellant argues that the above exchange was insufficient to sustain the Commonwealth's burden imposed under the Motor Vehicle Code, 75 Pa.C.S.A. § 1547. In an effort to understand the requirements of the statute and its interpretation by this court, we review those decisions which have focused on this issue. Appellant insists that the case law supports his argument while the Commonwealth argues that the trial court acted properly in finding the proper foundation was laid.

In *Commonwealth v. Culp,* 378 Pa.Super. 213, 548 A.2d 578 (1988), a panel of this court found that the Commonwealth had failed to sustain its burden of proof under § 1547(c)(2). *Culp* was a Commonwealth appeal of a trial court's suppression of blood test results in a DUI case. In his motion to suppress, Culp asserted that the method and equipment used during his blood test did not meet required standards, that the manner of testing was not as specified by law and that he did not voluntarily consent to the test. At the suppression hearing, the Commonwealth asked the court to take judicial notice that the lab was licensed and approved under the Clinical Laboratory Act and offered a reference to the Pennsylvania Bulletin in which the lab was cited as an approved facility. The Commonwealth also offered a letter from the Department of Health which stated that approval of a lab meant that the lab's procedures, equipment and personnel were qualified as well.

The *Culp* court ruled that in light of the specifically asserted infirmities in the testing method, personnel and equipment, mere reference to the Pennsylvania Bulletin was insufficient to satisfy the Commonwealth's burden on the motion to suppress. Because the Commonwealth presented no evidence regarding procedures or personnel qualifications, the court reasoned, it had not met its burden of proof. The court stated that Culp's specific claims regarding lab procedures and equipment warranted a more detailed response from the Commonwealth. *Id.* at 219, 548 A.2d at 581.

It would appear then, after *Culp,* that if the defendant specifically asserts infirmities in the testing methods, personnel or equipment, reference to the Pennsylvania Bulletin is

insufficient to prove compliance with § 1547(c)(2).[3]  However, a subsequent panel asserted a more general principle and upheld reference to the Pennsylvania Bulletin and judicial notice thereof as sufficient under § 1547(c)(2).  In *Commonwealth v. Garofalo*, 386 Pa.Super. 363, 563 A.2d 109 (1989), the trial court took judicial notice that the hospital in which the blood test was performed was rated as an approved facility in the Pennsylvania Bulletin.  "As such," the court reasoned, "all equipment, personnel, and procedures used are qualified and approved in accordance with § 1547(c)(2) ..."  *Id.* at 369, 563 A.2d at 112.

In the same year that *Garofalo* was decided, a different panel of this court decided *Commonwealth v. Kravontka*, 384 Pa.Super. 346, 558 A.2d 865 (1989), another case involving the validity of blood alcohol test results.  In *Kravontka*, the laboratory manager testified that the lab was approved by the Department of Health, and the court took judicial notice of the fact that the hospital was approved to perform blood alcohol analysis pursuant to a reference in the Pennsylvania Bulletin. This court found that the lab manager's testimony and judicial notice of the Pennsylvania Bulletin citation constituted compliance with § 1547(c)(2) and, therefore, a proper foundation was laid to allow admission of the test results.

Analysis of the above-cited case law does not provide us with a clear understanding of what is necessary to prove

3. Indeed, in *Commonwealth v. Leib*, 403 Pa.Super. 223, 588 A.2d 922, *alloc. denied* 528 Pa. 642, 600 A.2d 194 (1991), the court commented on the holding in *Culp* and stated:

In *Culp*, the Commonwealth not only attempted to prove that the laboratory was an approved facility by having the court take judicial notice of the fact ... but also attempted to prove, solely through judicial notice, that a department of health approval necessarily meant that the procedures, personnel and equipment were properly qualified and approved to perform the tests mandated by the Clinical Laboratory Act.  The *Culp* court held ... that judicial notice was proper to show only that the laboratory in question had been approved.

*Id.* 403 Pa.Super. at 239, 588 A.2d at 930 n. 8 (citations omitted).

Whether or not this comment in *Leib* is a correct statement of the holding in *Culp* is irrelevant.  The comment is dicta and, as such, is not binding on us.

compliance with § 1547(c)(2). It appears that some cases, such as *Garofalo*, permit a Pennsylvania Bulletin reference to satisfy the statute while others, such as *Culp*, may require more. Our research reveals that, although at first glance the cases appear to be at odds, a closer analysis reveals otherwise. *See* page 1018, *infra*.

It is clear that, by statute, the contents of the Pennsylvania Bulletin are to be judicially noticed. 45 Pa.C.S.A. § 506. However, in determining whether judicial notice alone is sufficient to satisfy the basic requirements of § 1547, we examine the process under which the state approves a laboratory for testing purposes. Our inquiry focuses on whether publication in the Pennsylvania Bulletin that a laboratory is approved carries with it sufficient indicia that the test results reported by the laboratory will be reliable.

Under the Clinical Laboratory Act, Pennsylvania's Department of Health ("the Department") is vested with authority to promulgate rules with respect to testing procedures and approvals. Pursuant to this authority, the Department has put in place a detailed and thorough program of testing and approving laboratories ("lab" or "labs") that provide, among other things, blood testing for alcohol content. The Department's Division of Chemistry and Toxicology handles the testing and approval programs. We have made a thorough review of the Department's approval process and have studied with interest the documents that are sent regularly to participating labs, including applications and testing questionnaires. We also reviewed the regulations, promulgated by the Department, which govern the approval process.

When a lab desires to be approved, it makes an application to the Department, informing it, among other things, about its equipment, personnel and testing methods. The application requires detailed descriptions of methodology used by the lab and also requires that the lab complete "Laboratory Personnel Qualification Appraisals" for all personnel. Each appraisal sets forth an employee's educational background, clinical laboratory training, license, certification and registration information, his or her passing of state proficiency examinations and

clinical laboratory experience. The appraisals are evaluated by a state reviewer who determines, on an individual basis, whether an employee qualifies for the position stated.[4] The Department's regulations set forth minimum requirements for education and training of personnel. *See* 5 Pa.Code §§ 5.21–5.24.

Once an application is received and the lab is considered by the Department to be eligible for state approval by virtue of its methods, machinery and staff, the Department does a series of tests on specimens the lab has analyzed in an effort to determine if the testing procedures and results are correct. In many instances, the Department will send an examiner to the lab to observe procedures, equipment and personnel.

In the event the lab ultimately is approved by the State, it is subjected to continued testing from the Department. Approved labs are required to participate in four surveys per year. In each survey, five specimens are sent to the lab by the state and the lab is required to analyze the specimens and return them to the Department, which then grades the analyses to determine the propriety of the results. Included in the survey is a questionnaire concerning the procedures and equipment utilized by the lab. The lab's performance in testing the specimens and its answers to the questionnaire are the bases upon which a lab's approval is maintained or revoked.

All new labs approved for testing and all previously approved labs that maintain approval are then listed by the Department in the Pennsylvania Bulletin; this listing occurs on a semi-annual basis. They are presented in alphabetical order and are listed as approved for serum and plasma analyses (indicated by an S), approved for blood analyses (indicated by a B) and approved for serum, blood and plasma analyses (indicated by an SB).

4. An appraisal must be completed for every position in the laboratory, including Director, General Supervisor, Technical Supervisor and Technician.

■ Our review of the procedures utilized by the Department lead us to the conclusion that publication in the Pennsylvania Bulletin and judicial notice thereof is sufficient to satisfy the requirements of § 1547(c)(2). The Department's careful and thorough methods serve to insure that test results from an approved facility are valid and reliable. The extensive application process and the rigorous testing methods are designed to allow only those labs with high standards for performance to gain and/or maintain approval.

■ We note that the purpose of judicial notice is to avoid the formal introduction of evidence of a fact so well known in the jurisdiction that introduction of evidence in support thereof is unnecessary; however, judicial notice does not deny an opposing party the opportunity to disprove the fact sought to be judicially noticed. *Commonwealth v. Covert,* 322 Pa.Super. 192, 469 A.2d 248, 257 (1983). Therefore, a party who believes that, notwithstanding a lab's state approval and publication in the Pennsylvania Bulletin, some error in testing occurred, i.e., the improper timing of a test or an equipment malfunction, is free to present evidence of that error to rebut the inference created by judicial notice. *See Appeal of Albert,* 372 Pa. 13, 22, 92 A.2d 663 (1952); *Commonwealth v. Morgan,* 265 Pa.Super. 225, 401 A.2d 1182, 1192 (1979).

■ We believe this is what occurred in the *Culp* case. There, appellant alleged specific deficiencies in the testing process. The suppression court evaluated the claims and found that their specificity warranted a *more detailed response* from the Commonwealth than mere reference to the Pennsylvania Bulletin. Therefore, the holding in *Culp* is not at odds with *Garofalo* or our decision today. It instead reflects a scenario possible in any case in which blood alcohol tests are offered as evidence: A party may convince the court that even though a lab has state approval, the circumstances surrounding his or her test were such that the results are not reliable. We caution, however, that only specific allegations of testing errors, to which the trial court gives credence, and not general, boilerplate objections to the admission of test results,

will mandate more than reference to the Pennsylvania Bulletin. *See Culp, supra.*

In the instant case, the Commonwealth requested that the trial judge take judicial notice of the fact that St. Francis Hospital was approved to perform blood alcohol analysis. The trial judge, having had previous experience with DUI cases in Lawrence County and familiar with the approved status of the facility, granted the Commonwealth's request. Appellant claims that the Commonwealth's failure to cite to the Pennsylvania Bulletin is fatal to admission of the test results.

Neither party has afforded this court the courtesy of citing to the Pennsylvania Bulletin. Our own research reveals that at the time of appellant's blood test, St. Francis was indeed approved by the Department for blood, serum and plasma analyses. *See* Pennsylvania Bulletin, Vol. 21 No. 1, January 5, 1991. Further, St. Francis had been approved for many years prior to appellant's testing date and continues to maintain its approved rating to the present date. In a county the size of Lawrence County, the fact that the major hospital in the area is approved for purposes of blood alcohol testing would likely be a fact well known to the court. The trial court committed no error in judicially noticing this fact. *See Commonwealth v. Brown,* 312 Pa.Super. 383, 458 A.2d 1012 (1983) (judicial notice intended to avoid proof of fact so well established as to be a matter of common knowledge) *See also Commonwealth v. Stumpo,* 306 Pa.Super. 447, 452 A.2d 809, 819 (1982) (judge who has intimate, ongoing knowledge of the court calendar should be able to take judicial notice of that knowledge). We advise, however, that in the future, in order to prevent an appeal based on whether a lab is approved, the Commonwealth should cite to the applicable volume and number of the Pennsylvania Bulletin. This simple step will provide a complete record with respect to the Commonwealth's burden of compliance with § 1547.[5]

5. This applies, of course, only to those cases wherein the Commonwealth chooses to rely on the Pennsylvania Bulletin in meeting its burden under § 1547. The Commonwealth is free to present witnesses

Because none of appellant's allegations of error is meritorious, we affirm the judgment of sentence.

to testify to the lab's approval and the adequacy of its methods, procedures, equipment and personnel.