**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Mary Nicole DEMARK, Appellee.**

Superior Court of Pennsylvania.

Argued March 29, 2002.

Filed May 31, 2002.

Frank P. Barletta, Asst. Dist. Atty., Wilkes-Barre, for Commonwealth, appellant.

Michael R. Kostelansky, Wilkes-Barre, for appellee.

Before FORD ELLIOTT, LALLY–GREEN, and CAVANAUGH, JJ.

LALLY–GREEN, J.

¶ 1 Appellant, the Commonwealth of Pennsylvania (the Commonwealth), appeals the order entered on April 20, 2001, granting the motion to suppress filed by Appellee, Mary Nicole DeMark. We reverse in part and affirm in part.

¶ 2 The facts as found by the trial court are as follows:

1. [Appellee] was arrested on August 1, 2000, and charged with one (1) count of Homicide by Vehicle while Under the Influence, 75 Pa.C.S.A. [§ ] 3735(a); two (2) counts of Driving Under the Influence of Alcohol or Controlled Substance, 75 Pa.C.S.A. [§ ] 3731(a)(1) and (a)(4); one (1) count of Homicide by Vehicle, 75 Pa.C.S.A. [§ ] 3732; and seven (7) summary offenses.

2. [Appellee] was involved in a one (1) car accident which occurred on Friday, July 21, 2000, at approximately 12:20 a.m., in the Borough of Forty Fort.

3. Officer William Stone of the Forty Fort Borough Police Department responded to the accident scene and discovered [Appellee] trapped in an overturned vehicle on Route 11 in Forty Fort Borough.

4. ... Officer Stone also observed a second individual walking along Route 11.

5. Upon further investigation Officer Stone determined the individual walking along Route 11 was Joseph Burgess and that he was a rear seat passenger in the overturned vehicle.

6. Upon further investigation, it was determined that a third individual by the name of Matthew DeMark was a front seat passenger in the vehicle and he was discovered lying on the roadway just north of the overturned vehicle.

7. Matthew DeMark was treated at the scene and transported to the Wilkes–Barre General Hospital where he subsequently died.

8. When Officer Stone first arrived at the scene and spoke to [Appellee], he detected an odor of alcoholic beverage emanating from her breath.

9. At the time of his initial investigation and while [Appellee] was in the overturned vehicle, Officer Stone could not determine if she was trapped, but thought she was.

10. Officer Stone directed [Appellee] to remain in her vehicle and wait for medical personnel to assist her.

11. While [Appellee] was trapped inside of her vehicle but not in police custody, Officer Stone asked [Appellee] if she was the operator of the vehicle to which [Appellee] stated "yes", and he further asked if she had been drinking to which [Appellee] stated "yes, a beer".

12. Officer Stone next spoke to [Appellee] when she was in the ambulance and at that time he advised her that she was under arrest for suspicion of driving under the influence.

13. [Appellee] was transported to the Nesbitt Hospital and while at the hospital, Officer Stone requested [Appellee] submit to a blood alcohol test to which [Appellee] agreed.

14. Appropriate chain of custody paperwork was completed by Officer Stone and hospital personnel.

15. An individual named Roxanne Sacks withdrew [Appellee's] blood.

16. [Appellee's] blood was drawn up on July 21, 2000 at 1:30 a.m.

17. The blood samples were sealed and delivered to Officer Stone.

18. Officer Stone kept them in his possession and drove directly to Wilkes–Barre General Hospital where he made contact with security personnel at the hospital.

19. Officer Stone together with hospital security, transported the samples of blood to the blood lab and same were placed in a locked refrigerator.

20. On the morning of July 21, 2000, at approximately 7:00 a.m., [Appellee's] blood was tested by Melissa Magda.

21. The testing of [Appellee's] blood was done in an approved laboratory and the individual who performed the blood test was properly licensed to perform said test.

22. The testing apparatus, a gas chromatograph, is an approved testing device.

23. The testing lab at the Wilkes–Barre General Hospital had a technical procedure manual that it utilized for performing blood alcohol tests.

24. All reagents and chemicals utilized in the testing process must be stored at a temperature between 2°–8° Celsius.

. . .

26. Testimony revealed that if the refrigerator's temperature was to fall below 2° Celsius or [rise] above 8°

Celsius it would affect the chemicals or reagents and this would affect the accuracy of any test utilizing these chemicals or reagents.

. . .

28. The technical procedural manual followed at the testing lab required that all reagents and chemicals used in the testing process be used before the expiration date.

29. The testimony revealed that if chemicals or reagents were utilized that were expired, same could affect the accuracy of the blood test.

. . .

34. The blood test results released to Officer Stone of the Forty Fort Police Department wherein it was indicated that [Appellee's] blood alcohol level was at a 0.166 were released pursuant to 75 Pa.C.S.A. § 3755 and 75 Pa.C.S.A. 1547[,] and as such, no warrant was necessary to release this medical information.

Trial Court Opinion, 4/20/01, at 1–5.

¶ 3 Appellee was charged with homicide by vehicle while driving under the influence, two counts of driving under the influence of alcohol or a controlled substance (DUI), homicide by vehicle, and numerous summary offenses.[1] As discussed *infra*, Appellee moved to suppress the results of certain blood alcohol content (BAC) tests.

¶ 4 Our review of the record reflects that two blood samples were drawn from Appellee at Nesbitt Memorial Hospital. The first blood sample, referred to as "legal" or "whole blood," was drawn after Officer Stone obtained Appellee's consent to draw and test her blood under the Implied Consent Law. Suppression Hearing, 4/10/01, at 20. The toxicology laboratory at Wilkes–Barre General Hospital tested the "legal blood." *Id.* at 55.

¶ 5 The second blood sample, referred to as a "medical blood," was drawn approximately ten minutes after the "legal blood" was drawn according to Officer Stone's request. *Id.* at 48. The "medical blood" was drawn for treatment of Appellee. *Id.* at 70. Nesbitt Memorial Hospital retained and tested the "medical blood," and obtained two results, an alcohol plasma of .197 and a toxicology alcohol of .207. *Id.* at 70 and 68. These results were released to Officer Stone pursuant to a subpoena of Appellee's medical records from Nesbitt Memorial Hospital. *Id.* at 49.

¶ 6 Appellee moved to suppress the results of the BAC test performed on the "legal blood" and the ambulance and medical records obtained by subpoena from Nesbitt Memorial Hospital. These records contained the results of the BAC test performed on the "medical blood."[2] The trial court granted the motion. This timely appeal followed.[3]

---

1. 75 Pa.C.S.A. § 3735(a), 75 Pa.C.S.A. §§ 3731(a)(1) and (a)(4)(ii), and 75 Pa.C.S.A. § 3732, respectively. Appellee was charged with the following summary offenses: reckless driving, 75 Pa.C.S.A. § 3736(a); minor prohibited from operating with any alcohol in system, 75 Pa.C.S.A. § 3718(a); failure to drive vehicle at safe speed, 75 Pa.C.S.A. § 3361; failure to secure driver and occupant in restraint system, 75 Pa.C.S.A. § 4581(a)(2); and purchase, consumption, possession or transportation of liquor or malt or brewed beverages, 18 Pa.C.S.A. § 6308(a).

2. Appellee also moved to suppress photographs of the deceased and the scene of the accident and inculpatory statements made to Officer Stone. The trial court granted in part and denied in part Appellee's motion to suppress the photographs. Suppression Hearing, 4/10/01, at 5–6. The trial court denied the motion to suppress Appellee's statements in its April 20, 2001 order. These rulings are not challenged in this appeal.

3. This appeal is an interlocutory appeal as of right under Pa.R.A.P. 311(d), which states:
   **(d) Commonwealth Appeals in Criminal Cases.** In a criminal case, under the cir-

¶ 7 The Commonwealth raises one issue for our review:

I. Did the lower court err in suppressing evidence proffered by the Commonwealth?

Commonwealth's Brief at 4.

¶ 8 Our standard of review for the grant of a motion to suppress is as follows:

In reviewing the ruling of a suppression court, our task is to determine whether the factual findings are supported by the record. If so, we are bound by those findings. Where the Commonwealth appeals the decision of the suppression court, we must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted. Where a motion to suppress has been filed, the burden is on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible.

*Commonwealth v. Howard,* 762 A.2d 360, 361 (Pa.Super.2000).

¶ 9 The Commonwealth makes two arguments concerning trial court error. First, the Commonwealth argues that the record does not support the trial court's conclusion that the results of the BAC test of the "legal blood" were unreliable. Second, the Commonwealth argues that the trial court incorrectly relied upon our Supreme Court's decision in *Commonwealth v. Shaw,* 564 Pa. 617, 770 A.2d 295 (2001). We begin our review with the Commonwealth's first argument.

cumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution.

¶ 10 Under 75 Pa.C.S.A. § 1547, results of a chemical test are admissible as evidence to show BAC of a defendant charged with violating 75 Pa.C.S.A. § 3731 (relating to driving under the influence of alcohol). The pertinent portions of the statute state:

(c) **Test results admissible in evidence.**—In any summary proceeding or criminal proceeding in which the defendant is charged with a violation of section 3731 or any other violation of this title arising out of the same action, the amount of alcohol or controlled substance in the defendant's blood, as shown by chemical testing of the person's breath, blood or urine, which tests were conducted by qualified persons using approved equipment, shall be admissible in evidence.

. . .

(2) Chemical tests of blood or urine shall be performed by a clinical laboratory licensed and approved by the Department of Health for this purpose using procedures and equipment prescribed by the Department of Health. . . .

75 Pa.C.S.A. § 1547(c)(2).

¶ 11 In general, BAC tests are basic and routine and, therefore, highly reliable. *Commonwealth v. Sullivan,* 399 Pa.Super. 124, 581 A.2d 956, 958 (1990). The Pennsylvania Department of Health approves laboratories to perform BAC tests. 75 Pa.C.S.A. § 1547(c)(2). "The Department's careful and thorough methods serve to [e]nsure that test results from an approved facility are valid and reliable."

In its Notice of Appeal, the Commonwealth certified that suppression of the BAC test results and the ambulance and medical records will terminate or substantially handicap the prosecution. Therefore, the requirements of Pa.R.A.P. 311(d) are satisfied.

*Commonwealth v. Brown,* 428 Pa.Super. 587, 631 A.2d 1014, 1018 (1993). Approved facilities are listed in the Pennsylvania Bulletin. *Id.* at 1017. Publication in the Pennsylvania Bulletin and judicial notice thereof satisfy the requirements of 75 Pa. C.S.A. § 1547(c). *Id.* at 1018. The Commonwealth may also establish the laboratory's approval and adequacy of methods, procedures, equipment, and personnel through testimony of witnesses. *Id.* at 1019, n. 5.

¶ 12 This Court has rejected attempts to increase the Commonwealth's burden with respect to validating test results in DUI cases. *Commonwealth v. Judge,* 437 Pa.Super. 51, 648 A.2d 1222, 1224, n. 1 (1994). Only specific allegations of testing errors, and not general, boilerplate objections to the admission of the test results, will require the Commonwealth to provide evidence of the test's reliability other than by reference to the Pennsylvania Bulletin. *Brown,* 631 A.2d at 1018. In the absence of any specific allegation, the court will not speculate as to how the defendant's blood sample might have been rendered inaccurate. *Judge,* 648 A.2d at 1224, n. 1.

¶ 13 Our review of the record reflects that the laboratory in which the BAC test of the "legal blood" was performed was licensed by the Department of Health to perform BAC tests. At the suppression hearing, the Commonwealth presented Mr. George Hockenbury, the supervisor of the toxicology laboratory at Wilkes–Barre General Hospital where the BAC test of the legal blood was performed. Mr. Hockenbury testified that at the time Appellee's blood was tested, the Wyoming Valley Health Care System and the Wilkes–Barre General Hospital were approved by the Department of Health to conduct BAC tests. Suppression Hearing, 4/10/01, at 55–56. Further, the Common-

wealth asked the trial court to take judicial notice that the Department of Health had approved the Wilkes–Barre General Hospital laboratory to perform BAC tests and such approval was published in the Pennsylvania Bulletin dated July 8, 2000. *Id.* at 56, 648 A.2d 1222. Therefore, the Commonwealth established that the Department of Health licensed the laboratory where the BAC test of the "legal blood" was performed and, therefore, the requirements of 75 Pa.C.S.A. § 1547(c) are satisfied. *Brown.*

¶ 14 Next, we examine whether specific allegations of testing errors were made. Our review of the record reflects that Appellee did not make any specific allegations of testing error. First, the trial court relied on the possibility that Appellee's sample was improperly refrigerated. Appellee presented no evidence that the refrigerator failed to maintain the proper temperature. Appellee did not even present evidence that improper refrigeration was likely. Since this is a general and speculative allegation of testing error, this allegation is insufficient to require the Commonwealth to provide additional evidence to prove the reliability of the BAC test. *Brown.*

¶ 15 Additionally, the reliability of the BAC test is not undermined by the fact that the condition of the blood sample was not noted as required under 28 Pa. Code § 5.52(6). 28 Pa.Code § 5.52(6) reads in pertinent part:

Each clinical laboratory shall have a readily available record indicating the daily accession of specimens containing the following information:

. . .

(6) The condition of the specimen when received that is, broken, leaked, hemolyzed, turbid, satisfactory and so forth

¶ 16 As the text reflects, 28 Pa.Code § 5.52(6) is a record-keeping requirement and does not relate to the test procedures themselves. Also, the pertinent regulations require that BAC tests be performed only on properly preserved samples, and Appellee has not alleged that Wilkes–Barre General Hospital has violated those regulations. *See,* 28 Pa.Code. § 5.44.[4] Since Appellant alleges only that the condition of the sample was not recorded, this allegation is insufficient to require the Commonwealth to provide additional evidence to prove the reliability of the BAC test. *Brown.* Since Appellant's allegations are insufficient to undermine the reliability of the results of the BAC test performed on Appellee's legal blood sample, the highly regarded trial court erred in suppressing those results.

¶ 17 The Commonwealth next argues that the trial court erred in applying *Shaw* to suppress the results of the BAC test performed on the second blood sample drawn from Appellant.[5] The Commonwealth appears to argue that footnote three of *Shaw* permits the admission of the results of a BAC test performed on the "medical blood" retained by Nesbitt Memorial Hospital.

¶ 18 In *Shaw,* our Supreme Court held that BAC test results must be suppressed where the blood was drawn for independent medical purposes and the results were released to the police without a warrant or exigent circumstances. *Shaw,* 770 A.2d at 299. The defendant in *Shaw* was taken to a hospital after a two-vehicle accident. While in the hospital, a Pennsylvania State Trooper approached the defendant and observed signs of intoxication. The trooper informed the defendant of the Implied Consent Law and that the hospital would be drawing his blood for medical purposes. The defendant requested that the trooper inform him of the results of the blood test. Shortly after this encounter, hospital personnel drew a sample of the defendant's blood for independent medical purposes. Later, the trooper telephoned the hospital and obtained the results of the BAC test performed on the defendant's blood. At no time did the trooper request that the hospital perform the BAC test. The defendant challenged the admission of the BAC test results on the grounds that the trooper did not request the hospital to perform the test, rendering the trooper's subsequent warrantless acquisition of the results improper. *Id.* at 298.

¶ 19 Our Supreme Court examined the circumstances under 75 Pa.C.S.A. § 3755. *Id.* at 297–298. 75 Pa.C.S.A. § 3755 provides that when a person is taken to a hospital emergency room for treatment after a motor vehicle accident in which the person was in control of one of the vehicles involved, and when probable cause exists to believe that the person drove under the influence of alcohol or a controlled substance, the emergency room physician shall order a blood sample drawn and transferred to a laboratory licensed to perform BAC testing for BAC testing to be done. *Id.* at 297.

---

**4.** 28 Pa.Code § 5.44(a) reads:

No specimen shall be examined if unsuitable for testing because of improper collection, improper preservation, apparent spoilage, excessive time lapse between collection and examination, when applicable, or other reason sufficient to render the findings of doubtful validity.

**5.** In its brief, the Commonwealth does not clearly indicate which blood sample it is arguing should be admissible under *Shaw.* However, at oral argument, the Commonwealth clarified that this portion of its argument pertains to the "medical blood" sample drawn for independent medical purposes.

¶ 20 The *Shaw* Court noted that § 3755 does not require that a police officer request that the test be done; rather, § 3755 required only that BAC testing be done when probable cause exists to believe the patient drove under the influence of alcohol or a controlled substance. *Id.* at 298. The *Shaw* Court held that because the defendant's blood sample was drawn for independent medical purposes and not pursuant to § 3755, the release of the results to the trooper without a warrant or exigent circumstances violated Article I, Section 8 of the Pennsylvania Constitution. *Id.* at 299.

¶ 21 Footnote three of *Shaw* suggests that "[t]he request of a police officer, based on probable cause ..., would seem to satisfy the probable cause requirement and therefore mandate that hospital personnel conduct BAC testing." *Id.* at 298, n. 3. The Commonwealth relies on the third footnote in *Shaw* for the proposition that the results of the second BAC test are admissible under the umbrella of the first BAC test.

¶ 22 The Commonwealth's argument fails because the Commonwealth failed to demonstrate that the requirement respecting governmental certification of the laboratory performing the BAC test was met *vis a vis* the "medical blood" BAC testing. In *Shaw*, the blood sample was required by statute to be tested by a laboratory certified by the Department of Health to perform BAC testing. In Appellee's case, the Commonwealth has failed to demonstrate that Nesbitt Memorial Hospital was approved by the Department of Health to perform BAC testing. Thus, we can not address the umbrella question since the Commonwealth has failed to demonstrate the reliability of the second test.

¶ 23 Finally, the Commonwealth argues that the trial court erred when it suppressed the ambulance and medical records subpoenaed by Officer Stone, including the BAC tests respecting the "medical blood." Since the Commonwealth failed to demonstrate the reliability of the BAC testing of the "medical blood," the Commonwealth does not demonstrate trial court error. Also, the Commonwealth fails to address in its brief the remainder of the subpoenaed records. Accordingly, the Commonwealth has waived any issue relating to the remainder of the suppressed ambulance and medical records. *Commonwealth v. Postell,* 693 A.2d 612, 617 n. 7 (Pa.Super.1997) (issues raised but not developed by argument or citation to authority are deemed waived).

¶ 24 Order reversed in part and affirmed in part. Remanded for further proceedings. Jurisdiction relinquished.