**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**John E. DAVIES, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 9, 2002.
Filed Nov. 14, 2002.

Richard S. Wasserbly, Doylestown, for appellant.

Diane E. Gibbons, Asst. Dist. Atty., and Daniel M. Keane, Asst. Dist. Atty., for Commonwealth, appellee.

Before: HUDOCK, FORD ELLIOTT, and OLSZEWSKI, JJ.

OLSZEWSKI, J.

¶ 1 This is a consolidated appeal from a single trial stemming from two separate information forms. The facts are very similar. The first set of charges stemmed from September 13, 2000, when appellant was stopped by the police after they observed him driving in an erratic manner. The officer that approached appellant's vehicle noticed the odor of alcohol about appellant, his eyes were bloodshot, and his speech was very slurred and hard to understand. Although his vehicle registration was sitting on the center console beside him, he was unable to produce it. He performed field sobriety tests poorly. The two officers on the scene, who had fourteen and eighteen years' experience, reached the conclusion that appellant was incapable of safe driving that night. He was arrested and submitted to a blood test that read 0.039 percent weight per volume of alcohol and 0.16 milligrams per liter ("mg/L") of morphine. This testing was done at Analytic Bio–Chemistries, Inc., ("ABC") by Paul Madsen, a laboratory technician.

¶ 2 The second set of charges resulted on September 29, 2000, when appellant was stopped again after a police officer observed that he was driving erratically. When asked for his paperwork, the officer testified that appellant had a "glazed look on his face." He was asked to step from his vehicle, and, while the two officers on the scene were conversing, he began the field sobriety tests—poorly—without them. When the officer administered the tests to him, he did not complete them successfully. This officer, with two years' service and fifty traffic stops, also reached the conclusion that appellant was incapable of safe driving that night. Again, appellant was arrested and submitted to blood testing, which revealed 0.14 mg/L of morphine. This testing was also done at ABC, but this time by Dr. Siek, director of the laboratory. At a consolidated bench trial, the Commonwealth produced Dr. Siek as an expert in toxicology. He formed the opinion that a person with either .039 BAC and 0.16 mg/L morphine or 0.14 mg/L morphine in their blood would not be able to operate a motor vehicle safely.

¶ 3 Appellant was convicted in both cases of driving under the influence of alcohol and/or a controlled substance which rendered him incapable of safe driving, in violation of 75 Pa.C.S.A. § 3731, as well as related summary offenses. His sentence included, among other things, incarceration of between 30 days and 12 months, but he was granted immediate parole from the bench. This appeal followed.

¶ 4 Appellant has raised two issues.[1] First, he claims that the trial court

---

1. In his concise statement of matters complained of on appeal, appellant also claimed that the trial court erred by admitting the police officers' opinions that he was incapable of safely driving as a result of the morphine in his bloodstream. Although the issue was preserved, appellant did not brief this issue here. Regardless, it would not have been successful:

   [T]he admissibility of evidence is a matter addressed to the sound discretion of the trial court, and [the appellate court] may reverse only upon a showing that the trial court abused its discretion. Moreover, this Commonwealth has adopted Federal Rule of Evidence 701, which allows testimony by a lay witness in the form of an opinion, where the opinion is (1) rationally based on the perception of the witness and (2) helpful to the determination of a fact in issue.... [A] police officer may testify to his or her opinion as to a suspect's alcohol-induced intoxication and the suspect's ability to drive safely when the officer has observed the suspect's appearance and acts.... [W]e find no basis upon which to distinguish opinion testimony of drug-induced intoxication from opinion testimony of alcohol-induced intoxication where the witness is

erred by admitting Dr. Siek's testimony on the grounds that his results were not generally accepted in the field of toxicology. Second, he assigns error to the trial court for not excluding the first blood test result because a qualified person, as defined by the Pennsylvania Code, did not perform it.

I. *"General Acceptance" of Expert Testimony*

¶ 5 Appellant asks this Court to find that the trial judge erred by admitting Dr. Siek's opinion testimony that appellant was incapable of safe driving on the nights in question because he did not reach it in a generally accepted manner. The applicable standard of review to this request is:

Absent a clear abuse of discretion or error of law, a trial court's decisions regarding expert testimony will be upheld. When reviewing the court's factual findings, we are limited to determining whether those findings "rest on legally competent and sufficient evidence."

*Thomas v. West Bend Co.*, 760 A.2d 1174, 1177–78 (Pa.Super.2000) (citations omitted).

¶ 6 In Pennsylvania, expert testimony must have "gained general acceptance in the particular field in which it belongs" to be admissible. *Commonwealth v. Topa*, 471 Pa. 223, 369 A.2d 1277, 1281 (1977) (quoting *Frye v. United States*, 293 F. 1013, 1014 (D.C.Cir.1923)). Since the *"Frye* test represents an attempt to measure the quality of scientific evidence prior to admission, ... [Pennsylvania] courts have considered this to be necessary *whenever* science enters the courtroom, because 'there is the danger that the trial judge or jury will ascribe a degree of

personally familiar with the effects of narcotics.
*Commonwealth v. Yedinak*, 450 Pa.Super. 352, 676 A.2d 1217, 1221 (1996) (citations

certainty to the testimony of the expert ... which may not be deserved.'" *Blum v. Merrell Dow Pharmaceuticals, Inc.*, 705 A.2d 1314, 1317 (Pa.Super.1997) (quoting *Topa*, 369 A.2d at 1281) (text altered and emphasis added) (omission in original). The question, then, is whether the trial judge abused her discretion when she decided that Dr. Siek's opinion as to appellant's ability to drive safely was reached in a generally accepted manner.

¶ 7 In her written opinion, the trial judge points to the evidence that she relied on to form her conclusion that Dr. Siek's method was generally accepted. At a pretrial *Frye* hearing, he testified that the scientific community has recognized that morphine would affect a person's ability to operate a vehicle. N.T. Motions Practice, 7/11/01, at 189–90. He further testified that the therapeutic range of morphine is between 0.01 and 0.10 mg/L and that the likelihood of impairment increases as one exceeds that level. *Id.* at 186, 193–94. He testified that he relied on published materials, and who they were written by. *Id.* at 191–93. Finally, he testified that, to reach his conclusion, he considered:

The results of the laboratory findings. The comparison to previous findings that we have had with respect to this particular drug. The case history. That actual actions of the individual.... In other words, again, it is matching the situation up to the laboratory test findings and does it fit and does it make sense to myself as a toxicologist.

*Id.* at 184–85. Dr. Lange, appellant's own expert toxicologist, admitted that Dr. Siek's methodology was generally accepted. *Id.* at 205. In our own review of the record, we note that Dr. Siek also stated

omitted). Our review of the record indicates that the trial judge did not abuse her discretion by admitting the officers' lay opinion testimony.

that other toxicologists testify as to someone's capability to drive safely "all the time. And the ones that I have heard go about it the same way as I am going about it. I've talked to [other] individuals and this was the way they carry out the practice of toxicology." *Id.* at 185.

¶ 8 In sum, there was ample "legally competent and sufficient evidence" to support the trial judge's conclusion that Dr. Siek reached his opinion in a generally accepted manner. Therefore, it was no abuse of discretion for her to admit his testimony.[2] Further, Dr. Siek's testimony was cumulative to the facts stated in the introduction to this opinion, which independently would support the verdict that appellant was not fit to drive a vehicle on either night. As such, any error would have been harmless. *See Commonwealth v. Petroll,* 558 Pa. 565, 738 A.2d 993, 1005–06 (1999).

## II. *Qualification of Laboratory Personnel*

¶ 9 The second issue stems from the qualifications of the person that tested appellant's September 13th blood sample at ABC, Paul Madsen. Appellant claims that the Pennsylvania Code required that the blood sample be tested by a "qualified person"; and that, despite a discovery request, the Commonwealth did not provide detailed information about Mr. Madsen's educational background or work experience. Because it was not determined that he was a "qualified person," according to appellant, the test results should have been suppressed. At trial, the court took judicial notice that "ABC was at all relevant times approved by the Department of Health under the Clinical Laboratories Act . . . as set forth in the list of approved facilities in the Pennsylvania Bulletin, Volume 30, Number 28 at 3513." N.T. Trial Court Opinion, 5/3/02, at 6.

¶ 10 Appellant is correct that blood tests in Pennsylvania for alcohol and controlled substances must be done by a "qualified person." The Pennsylvania Code provides:

> In any summary proceeding or criminal proceeding in which the defendant is charged with a violation of section 3731 [driving under the influence] or any other violation of this title arising out of the same action, the amount of alcohol or controlled substance in the defendant's blood, as shown by chemical testing of the person's breath, blood or urine, which tests were conducted by *qualified persons* using approved equipment, shall be admissible in evidence . . . .

(2) Chemical tests of blood or urine shall be performed by a clinical laboratory licensed and approved by the Department of Health for this purpose using procedures and equipment prescribed by the Department of Health or by a Pennsylvania State Police criminal laboratory. For purposes of blood and urine testing, *"qualified person" means an individual who is authorized to perform those chemical tests under the act of September 26, 1951 (P.L. 1539, No. 389), known as The Clinical Laboratory Act.*

---

**2.** Appellant also analyzes Dr. Siek's testimony under the test enunciated by the U.S. Supreme Court in *Daubert v. Merrell Dow Pharms.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Unfortunately for appellant, as he admits in his brief, *Daubert* is not the law in Pennsylvania. That case governs the standard of admissibility of expert scientific testimony in *federal* courts, while the Pennsylvania Supreme Court has chosen to leave the question "[w]hether or not the rationale of *Daubert* will supersede or modify the *Frye* test in Pennsylvania . . . to another day." *Commonwealth v. Crews,* 536 Pa. 508, 640 A.2d 395, 400 n. 2 (1994). We see no need to explore that issue here.

75 Pa.C.S.A § 1547 (1996) (emphasis added) (footnote omitted). The Clinical Laboratory Act, as this Court has previously held, "sets forth a series of rules related to the operation of testing facilities, including minimum education and work experience requirements for the laboratory's supervisor, permit application requirements, and Department of Health rights of inspection. It also vests in the Department of Health the power to adopt rules and regulations governing testing procedures." *Commonwealth v. Brown*, 428 Pa.Super. 587, 631 A.2d 1014, 1015 (1993). Therefore, we concluded, "publication in the Pennsylvania Bulletin and judicial notice thereof is sufficient to satisfy the requirements of § 1547(c)(2). The Department [of Health]'s careful and thorough methods serve to insure that test results from an approved facility are valid and reliable. The extensive application process and the rigorous testing methods are designed to allow only those labs with high standards for performance to gain and/or maintain approval." *Id.* at 1018. Given that the trial judge took notice that ABC was at all relevant times listed in the Pennsylvania Bulletin, the requirements of 75 Pa.C.S.A. § 1547 were satisfied. We find that there was no abuse of discretion.

¶ 11 The judgment of sentence of the court below is AFFIRMED.

¶ 12 FORD ELLIOTT, J., Concurs in the Result.