**COMMONWEALTH of Pennsylvania,**
**Appellee,**

**v.**

**Jon M. COOK, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 14, 2004.
Filed Nov. 29, 2004.
Reargument Denied Feb. 10, 2005.

Anthony Sciarrino, Smethport, for appellant.

Michael D. Alfieri, Asst. Dist. Atty., Smethport, for Com., appellee.

BEFORE: JOYCE, BENDER and BOWES, JJ.

OPINION BY BENDER, J.:

¶ 1 Jon M. Cook (Appellant) appeals from the judgment of sentence entered following convictions for driving under the influence and related summary offenses. Appellant raises several allegations of error, all of which we find to be without merit. Accordingly, for the following reasons, we affirm.

¶ 2 The trial court made the following findings of fact after the suppression hearing:

> At approximately 11:15 to 11:20 p.m. on July 20, 2001, Trooper Daniel A. Woods, off duty, followed a red Cavalier through Mount Jewett and partially down Hazel Hurst hill, and observed that the vehicle traveled into the parking lane, nearly striking the curb, and was otherwise erratically driving, and reported this information to the State Police dispatcher.
>
> He further observed that the defendant crossed the fog line two to three times, one-half to one-third of the car width, during the time which he followed the vehicle which was close to a mile. He did not report this information directly to Trooper Kraynick. Subsequently, Trooper Kraynick received information from the Police Communications Officer stating that Trooper Woods had encountered an erratic driver.
>
> Subsequently, Trooper Kraynick came upon a red Chevy Cavalier east of Hazel Hurst on Route 6, followed the vehicle for approximately one mile and saw the defendant drive over the right fog line to the extent of half the vehicle width, three times, and then rapidly jerk back into his lane of travel.
>
> Based on observations, Trooper Kraynick stopped the defendant and subsequently arrested him for driving under the influence of alcohol.
>
> . . .
>
> The Police Communications Officer also told Trooper Kraynick that the car was a red Cavalier and the first three letters of the license plate.

Trial Court Opinion (T.C.O.), 1/18/02, at 1–2. Appellant was convicted following a bench trial, after which he filed this appeal raising four questions for our review:

1. Should the McKean County Court of Common Pleas (hereinafter "Trial Court") have granted Defendant's Omnibus Pretrial Motion to Suppress Evidence, including issues concerning the admission of testimony of Trooper Woods?

2 Should the Trial Court have granted Defendants [sic] Motion to Dismiss Pursuant to Rule 600?

3. Should the Trial Court enforced [sic] the subpoena served on Jerry Jenkins of the Bradford Regional Medical Center by adjourning the trial so that Mr. Jenkins could obtain the material requested by the subpoena; and by failing to do so did the Trial Court deny Defendant the opportunity to effectively cross-examine Mr. Jenkins concerning the blood-alcohol test results in this case in violation of his state and federal constitutional rights to compulsory process and confrontation?

4. Was the Verdict of Guilty on Count 3 improper as the evidence was insufficient to sustain the verdict, and was insufficient due its [sic] inconsistency with the verdict of Not Guilty on Count 4?

Brief for Appellant at 7.

¶ 3 In the first question presented for our review, Appellant claims that

the trial court erred by denying his motion to suppress. Our standard for reviewing a trial court's order denying a motion to suppress is as follows:

> In an appeal from the denial of a motion to suppress, our role is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. In making this determination, we may consider only the evidence of the prosecution's witnesses and so much of the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the evidence supports the factual findings of the suppression court, we may reverse only if there is an error in the legal conclusions drawn from those factual findings. As a reviewing court, we are therefore not bound by the legal conclusions of the suppression court and must reverse that court's determination if the conclusions are in error or the law is misapplied.

*Commonwealth v. Ayala*, 791 A.2d 1202, 1207 (Pa.Super.2002) (citing *Commonwealth v. Turner*, 772 A.2d 970, 972–73 (Pa.Super.2001) (*en banc* )).

¶ 4 Appellant claims that Trooper Kraynik did not possess a reasonable and articulable suspicion of a violation of the vehicle code when he stopped Appellant. The authority of a police officer to stop a vehicle for a suspected violation of the vehicle code is governed by 75 Pa.C.S. § 6308. This statute was amended in 2003, and the amendments became effective on February 1, 2004. Therefore, the prior version of the law applies to this case, and it states:

**(b) Authority of police officer.—** Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has articulable and reasonable grounds to suspect a violation of this title, he may stop a vehicle. 75 Pa.C.S. § 6308(b) (amended 2003).[1] The courts of this Commonwealth have expounded at length on what the above standard means.

¶ 5 In *Commonwealth v. Whitmyer*, 542 Pa. 545, 668 A.2d 1113 (1995), the Court stated that the police must possess probable cause in order to stop a vehicle for a suspected violation of the vehicle code:

> If the alleged basis of a vehicular stop is to permit a determination whether there has been compliance with the Motor Vehicle Code of this Commonwealth, it is encumbent [sic] upon the officer to articulate specific facts possessed by him, at the time of the questioned stop, which would provide probable cause to believe that the vehicle or the driver was in violation of some provision of the Code.

*Id.* at 1116 (alteration in original) (quoting *Commonwealth v. Swanger*, 453 Pa. 107, 307 A.2d 875, 879 (1973)). In *Whitmyer*, the Commonwealth argued that "reasonable and articulable grounds" was a less stringent legal standard than probable cause. The Court rejected this argument and reasoned as follows:

> The crux of the Commonwealth's argument centers on the semantic difference between the standard articulated in [*Commonwealth v. Murray*, 460 Pa. 53, 331 A.2d 414 (1975),]—probable cause to believe that there has been a violation of the Vehicle Code, and the language of

---

1. As amended, the statute *lowered* the quantum of cause an officer must possess from "articulable and reasonable grounds" to "reasonable suspicion." 75 Pa.C.S. § 6308(b). Whether a reasonable suspicion standard

comports with the protections of the United States and Pennsylvania Constitutions is a matter that is clearly beyond the scope of our decision here.

the statute—articulable and reasonable grounds to suspect a violation of the Vehicle Code. However, when we balance the underlying interests of the individual and the government, the two standards amount to nothing more than a distinction without a difference.

*Id.*

■ ¶ 6 In the instant case, the trial court found that the police possessed probable cause to believe that Appellant had violated 75 Pa.C.S. § 3309(1) which states:

§ 3309. **Driving on roadways laned for traffic**

Whenever any roadway has been divided into two or more clearly marked lanes for traffic the following rules in addition to all others not inconsistent therewith shall apply:

(1) **Driving within single lane.**—A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety.

Whether an officer possesses probable cause to stop a vehicle for a violation of this section depends largely upon on whether a driver's movement from his lane is done safely. *See Commonwealth v. Gleason,* 567 Pa. 111, 785 A.2d 983 (2001).

¶ 7 In *Gleason,* the Court concluded that an officer's observation of a vehicle crossing the solid white fog line two times by six to eight inches over a distance of approximately one quarter mile, did not establish probable cause of a violation of Section 3309(1). *Id.* at 989. The Court stated: "the lack of any evidence at the suppression hearing that Appellant's driving **created a safety hazard** leads us to agree with the trial court that there was insufficient evidence to support a Section 3309(1) violation." *Id.* (emphasis added) (citations and quotation marks omitted). In *Commonwealth v. Slonaker,* 795 A.2d

397 (Pa.Super.2002), this Court distinguished *Gleason* on the basis that the officer in *Slonaker* observed the defendant fully cross the solid white fog line three times over a period of five miles and that he weaved numerous times over the double yellow center line and the solid white fog line without fully crossing either. *Id.* at 400. We determined that the driver's actions were "significantly less benign" than those of the defendant in *Gleason. Id.* at 401.

■ ¶ 8 We reach the same conclusion in the instant case. Initially, we note that Trooper Kraynick received a call from the radio dispatch stating the Trooper Woods had observed a red Cavalier being driven in an erratic manner. Thus, before even observing Appellant in his car, Trooper Kraynick had cause to believe that Appellant was driving erratically. And upon locating Appellant in his red Cavalier, Trooper Kraynick observed Appellant "drive over the right fog line to the extent of half the vehicle width, three times, and then rapidly jerk back into his lane of travel." T.C.O., 1/18/02, at 2. Whereas the defendant in *Gleason* only drifted over the fog line by several inches, Appellant crossed the line by several feet. Furthermore, the defendant in *Gleason* was observed over a distance of only one quarter mile, whereas Trooper Kraynick observed Appellant over a distance of one mile and knew that Appellant had already been observed driving erratically by Trooper Woods. Most importantly, after crossing the fog line by half of a car length, Appellant rapidly jerked his car back into his lane of travel. He did so on three different occasions. Appellant's actions exhibit that when he realized that he had inadvertently crossed the fog line, he sought to remedy his mistake in an overly anxious and unsafe manner by jerking his car back to his lane.

¶ 9 We conclude that the foregoing observations were sufficient to give Trooper Kraynick probable cause to believe that Appellant moved his car from his lane of travel in an unsafe manner, and therefore, violated Section 3309(1). In so concluding, we are mindful that "[p]robable cause does not require certainty, but rather exists when criminality is one reasonable inference, not necessarily even the most likely inference." *Commonwealth v. Lindblom,* 854 A.2d 604, 607 (Pa.Super.2004). Accordingly, the trial court did not err in denying Appellant's motion to suppress.

¶ 10 In the second issue presented for our review, Appellant claims that the trial court erred in denying his motion to dismiss for a violation of Pa. R.Crim.P. 600.

> In evaluating Rule [600] issues, our standard of review of a trial court's decision is whether the trial court abused its discretion. The proper scope of review in determining the propriety of the trial courts ruling is limited to the evidence on the record of the Rule [600] evidentiary hearing and the findings of the lower court. In reviewing the determination of the hearing court, an appellate court must view the facts in the light most favorable to the prevailing party.

*Commonwealth v. Vesel,* 751 A.2d 676, 680 (Pa.Super.2000) (citations omitted). Appellant claims that the Commonwealth violated subsection (A)(3), which states:

> Trial in a court case in which a written complaint is filed against the defendant, when the defendant is at liberty on bail, shall commence no later than 365 days from the date on which the complaint is filed.

Pa.R.Crim.P. 600(A)(3).

¶ 11 In the instant case, both Appellant and the Commonwealth agree that the mechanical run date of the 365 day period

was July 23, 2002. Appellant's bench trial was scheduled to commence on October 9, 2002, which was approximately seventy-five days after the mechanical run date. However, pursuant to Pa.R.Crim.P. 600(C)(3), certain time may be excluded from this calculation:

> (C) In determining the period for commencement of trial, there shall be excluded therefrom:
>
> . . .
>
> (3) such period of delay at any stage of the proceedings as results from:
>
>> (a) the unavailability of the defendant or the defendant's attorney;
>>
>> (b) any continuance granted at the request of the defendant or the defendant's attorney.

Pa.R.Crim.P. 600(C)(3).

¶ 12 The Commonwealth argues that the trial court correctly determined that when certain time is excluded under Rule 600, the scheduled trial date of October 9, 2002, did not violate Rule 600. We agree. The first segment of time to be excluded was the amount of time attributable to Appellant's filing his motion to suppress.

> [A] defendant is unavailable only if the filing of the pretrial motion caused a delay in the commencement of trial. Moreover, to establish that the delay is excludable, the Commonwealth must demonstrate, by a preponderance of the evidence, that it exercised due diligence in opposing or responding to the pretrial motion; a delay caused by the Commonwealth's lack of due diligence will not constitute excludable time.

*Commonwealth v. Wallace,* 804 A.2d 675, 679 (Pa.Super.2002) (citation omitted). In the instant case, Appellant filed a motion to suppress on November 7, 2001. The trial court denied the motion on January 18, 2002. Appellant concedes that the

Commonwealth was diligent in responding to this motion. Brief for Appellant at 28. Therefore, pursuant to *Wallace*, the period of time from November 7, 2001 to January 18, 2002, a period of 72 days was excludable. Furthermore, on January 17, 2002, Appellant requested a continuance to February 7, 2002. Thus, pursuant to Pa. R.C.P. 600(C)(3)(b), the period of time from January 18, 2002 to February 7, 2002, 20 days, is excludable. Thus, the sum of this excludable time is 92 days.

¶ 13 As stated above, the mechanical run date was July 23, 2002. When we add the 92 days of excludable time, the run date is extended to October 23, 2002. Appellant's trial was scheduled for October 9, 2002, and therefore, there was no Rule 600 violation.

¶ 14 In the third question presented for our review, Appellant claims that the trial court erred in not enforcing a subpoena to Jerry L. Jenkins, the Director of Laboratory Services at Bradford Regional Medical Center, the lab which performed the test of Appellant's blood alcohol content. Although our research has not unearthed a standard for reviewing a trial court's decision not to enforce a subpoena, we conclude that the trial court's decision in the instant case was in essence similar to a decision to quash a subpoena, or part thereof.

> When reviewing a court's disposition of a motion to quash a subpoena, we grant great deference to the factual findings of the trial court. We will affirm the court's decision unless we find that the court abused its discretion or committed an error of law.

*Commonwealth v. Simmons*, 719 A.2d 336, 340 (Pa.Super.1998).

¶ 15 The subpoenaed witness, Mr. Jenkins, appeared at trial and testified, but he did not produce certain procedure manuals, operating instructions and personnel papers demanded in the subpoena. At trial, Appellant requested a continuance and an order from the trial court requiring that Mr. Jenkins produce the documents demanded in the subpoena. The trial court denied Appellant's request. In *Commonwealth v. Demark*, 800 A.2d 947 (Pa.Super.2002), this Court discussed the reliability of blood alcohol tests and the Commonwealth's burden in showing a test's validity.

> In general, BAC tests are basic and routine and, therefore, highly reliable. The Pennsylvania Department of Health approves laboratories to perform BAC tests. 75 Pa.C.S.A. § 1547(c)(2). "The Department's careful and thorough methods serve to [e]nsure that test results from an approved facility are valid and reliable." *Commonwealth v. Brown*, 428 Pa.Super. 587, 631 A.2d 1014, 1018 (1993). Approved facilities are listed in the Pennsylvania Bulletin. *Id.* at 1017. Publication in the Pennsylvania Bulletin and judicial notice thereof satisfy the requirements of 75 Pa.C.S.A. § 1547(c). *Id.* at 1018. The Commonwealth may also establish the laboratory's approval and adequacy of methods, procedures, equipment, and personnel through testimony of witnesses. *Id.* at 1019 n. 5.

> This Court has rejected attempts to increase the Commonwealth's burden with respect to validating test results in DUI cases. *Commonwealth v. Judge*, 437 Pa.Super. 51, 648 A.2d 1222, 1224 n. 1 (1994). Only specific allegations of testing errors, and not general, boilerplate objections to the admission of the test results, will require the Commonwealth to provide evidence of the test's reliability other than by reference to the Pennsylvania Bulletin. *Brown*, 631 A.2d at 1018. In the absence of any specific allegation, the court will not speculate as

to how the defendant's blood sample might have been rendered inaccurate. *Id.* at 952–53. Appellant acknowledges that the lab that tested his blood is listed as an approved facility in the Pennsylvania Bulletin. Brief for Appellant at 40–41.

¶ 16 However, Appellant claims he has a "right to challenge the test results" and that he should have been permitted to use a subpoena to "obtain evidence to attempt to challenge[ ] the result." Brief for Appellant at 40. In support of this argument, Appellant cites *Commonwealth v. Renninger*, 452 Pa.Super. 421, 682 A.2d 356 (1996), where we stated that "judicial notice of the laboratory's certification created a *rebuttable* presumption of validity which [defendant] had every right to attack at trial." *Id.* at 359. We agree that Appellant had every right to present evidence to rebut the presumption of the blood test's validity. However, we conclude that when a defendant seeks to introduce such evidence by means of a subpoena to a third party to produce documents, the defendant must be prepared with an offer of proof that states "specific allegations of testing errors, and not general, boilerplate objections." *Demark*, 800 A.2d at 953.

¶ 17 In the instant case, Appellant presented no specific allegations of testing errors before the trial court; nor does he allege any before this Court. "[S]ubpoenas are not to be used to compel production of documents merely for inspection or for a fishing expedition." *Commonwealth v. McEnany*, 446 Pa.Super. 609, 667 A.2d 1143, 1149 (1995) (quotation marks omitted). Appellant's position is that Mr. Jenkins should have been ordered to bring certain procedure manuals, operating instructions and personnel papers, amounting to "tons and tons of stuff," to court without Appellant ever presenting a single allegation of testing error. N.T., 3/26/03, at 98. The trial court concluded that it was "just a fishing expedition" and that it "[went] on at length with no merit to it whatsoever." N.T., 3/26/03, at 102. We discern no error of law or abuse of discretion in the trial court's determination of this issue.

¶ 18 In the fourth question presented for our review, Appellant claims that the evidence was insufficient to convict him of a violation of 75 Pa.C.S. § 3309(1), because the verdict was inconsistent with his acquittal for careless driving. Inconsistent verdicts are not a basis for reversal. *See Commonwealth v. Gillen*, 798 A.2d 225, 230 (Pa.Super.2002).

> This Court has held that consistency in verdicts in criminal cases is not necessary. It is well-settled that juries may render inconsistent verdicts. Pursuant to Pa.R.Crim.P. 1101, 42 Pa.C.S.A., judges have the same powers as juries when a jury trial is waived. Accordingly, a judge, in a non-jury trial, has the power to render inconsistent verdicts. As such, this Court will not disturb a guilty verdict on the basis of apparent inconsistencies as long as there is sufficient evidence to support the verdict.

*Commonwealth v. Coon*, 695 A.2d 794, 799 (Pa.Super.1997) (citations and quotation marks omitted).

¶ 19 Therefore, the question before us is whether there was sufficient evidence to sustain Appellant's conviction.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.... In addition, we note that the facts and circumstances established by

the Commonwealth need not prelude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.

*Commonwealth v. Filer,* 846 A.2d 139, 140 (Pa.Super.2004). The crux of Appellant's argument is that there is no evidence that Appellant's driving created a safety hazard. But as we already concluded above, the testimony of Trooper Kraynick at the suppression hearing, testimony that he repeated at trial, N.T., 3/26/03, at 13–42, established that Appellant moved his car from his lane in an unsafe manner. Accordingly, there is sufficient evidence to sustain Appellant's conviction.

¶ 20 Judgment of sentence **AFFIRMED**.