**COMMONWEALTH of Pennsylvania,
Appellant,**

v.

**Diane Lynn KLOPP, Appellee.**

Superior Court of Pennsylvania.

Argued Oct. 27, 2004.
Filed Dec. 13, 2004.

Douglas Waltman, Asst. Dist. Atty., Reading, for Commonwealth, appellant.

David R. Eshelman, Reading, for appellee.

Before: STEVENS, McCAFFERY and TAMILIA, JJ.

OPINION BY TAMILIA, J.:

¶ 1 The Commonwealth appeals from the April 1, 2004 Order granting appellee Diane Lynn Klopp's motion to suppress evidence seized after she was arrested for driving while under the influence of alcohol. Appellee's vehicle was observed at 2:00 a.m., by Pennsylvania State Trooper James Dziedzic, drifting back and forth across the fog line and double yellow line. Appellee failed field sobriety tests and had a blood alcohol content (BAC) of 0.089%. The Commonwealth argues that because appellee's erratic driving posed a safety hazard to other motorists, Trooper Dziedzic had probable cause to effectuate the traffic stop.

¶ 2 The facts as set forth in the trial court Opinion follow.

On May 31, 2003, at approximately 2 a.m. Trooper James Dziedzic and another trooper while in uniform and in a marked patrol vehicle were traveling east on Route 73, a two-lane highway in Ruscombmanor Township, Berks County. At the aforesaid time and place, the troopers saw a dark-colored Nissan Pathfinder ahead of them. While they followed they observed the Pathfinder drift back and forth across its lane of traffic and cross the white fog line and the double yellow lines that divide Route 73. The Pathfinder crossed the double yellow lines four times. During the fourth time a vehicle in the oncoming lane of traffic moved to the right but Trooper Dziedzic did not notice if this vehicle left its lane of travel. However, he did observe this vehicle did not take any drastic evasive action.

Trooper Dziedzic activated his overhead lights to stop the Pathfinder. The Pathfinder then turned left onto Oley Road and pulled over. Trooper Dziedzic approached the Pathfinder[,] observed that the defendant was the driver, identified himself and explained why he had stopped her. He then detected a strong odor of alcohol emanating from her breath, and noticed that her eyes appeared to be bloodshot and her speech was sluggish. Trooper Dziedzic asked the defendant to step out of the car and perform field sobriety tests. The defendant performed two field sobriety tests and failed both of them. The trooper concluded that the defendant "had not that much to drink as far as alcohol was concerned" and gave her the opportunity to take a preliminary breath test. The defendant took the test three times because she has asthma and the result was positive for the presence of alcohol. Trooper Dziedzic then arrested the defendant for DUI.

The trooper took the defendant to St. Joseph's Hospital, Reading, where he read to her the implied consent warnings as well as her Miranda rights. The defendant consented to a blood alcohol test and blood was collected at 2:59 a.m. The blood test results were .089%.

The Commonwealth charged the defendant with DUI [75 Pa.C.S.A. § 3731(a)(1)] and driving on roadways laned for traffic 75 Pa.C.S.A. Section 3309(1). The defendant filed a motion to suppress evidence and we held a hearing on this motion on February 26, 2004. By way of order dated April 1, 2004, we granted the defendant's requested relief and suppressed the evidence seized in this case. The Commonwealth's timely appeal followed.

Suppression Court Opinion, Eshelman, J., 5/27/04 at 1–2.

¶ 3 In granting suppression of evidence seized, the suppression court ruled that erratic driving is not a *per se* violation of the Vehicle Code so as to justify a traffic stop, and appellee's driving did not pose a hazard to other motorists.

> [T]he defendant posed no safety hazard when her vehicle crossed the double yellow lines on the sole occasion when there was oncoming traffic. There was no impact. The oncoming driver moved an unspecified distance within his or her lane but there is no evidence that they left the lane. The driver took no drastic evasive action in response to the defendant's crossing of the center lines. No other evidence of oncoming traffic was presented to the court. Therefore, at the time of the stop, Trooper Dziedzic lacked specific facts, which would have provided probable cause to believe that the defendant was in violation of Section 3309(1) [Driving on roadways laned for traffic].

*Id.* at 8. In support of its ruling, the court relied on a string of Commonwealth cases addressing the issue of when a driver's actions provided probable cause for a vehicular stop. *See Commonwealth v. Baumgardner,* 767 A.2d 1065 (Pa.Super.2001), *reversed,* 568 Pa. 324, 796 A.2d 965 (2002) (holding vehicle weaving within own lane does not justify investigatory stop); *Commonwealth v. Gleason,* 567 Pa. 111, 785 A.2d 983 (2001) (holding, *inter alia,* an officer's observation, over a distance of 1/4 mile, of a vehicle crossing the fog line by six to eight inches on two or three occasions for a period of a second or two is not probable cause to effectuate a traffic stop); *Commonwealth v. Whitmyer,* 542 Pa. 545, 668 A.2d 1113 (1995) (reasoning officer who followed defendant for 2/10 of a mile, estimated his speed at 70 miles per hour, and observed an erratic lane change, did not have probable cause to conclude defendant was traveling at an unsafe speed and to make a traffic stop);

*Commonwealth v. Battaglia,* 802 A.2d 652 (Pa.Super.2002), *appeal denied,* 576 Pa. 718, 841 A.2d 528 (2003) (holding motorist weaving left to right within own lane is insufficient basis upon which to stop vehicle).

¶ 4 The standard employed by this Court when considering a Commonwealth appeal from an Order granting suppression follows.

> In reviewing the ruling of a suppression court, our task is to determine whether the factual findings are supported by the record. If so, we are bound by those findings. Where, as here, it is the Commonwealth who is appealing the decision of the suppression court, we must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted.

*Commonwealth v. Lindblom,* 854 A.2d 604 (Pa.Super.2004) (citations omitted) (holding officer's observation of a vehicle crossing the center, double yellow lines on four or five occasions, at times straddling them, and crossing the berm four or five times, constituted probable cause for a traffic stop), *quoting Commonwealth v. DeWitt,* 530 Pa. 299, 301–302, 608 A.2d 1030, 1031 (1992) (footnote omitted). Where those facts are supported by the record, an appellate court is bound and may reverse only if it decides the legal conclusions drawn by the suppression court were erroneous. *Commonwealth v. Garcia,* 2004 PA Super. 372, 859 A.2d 820 (2004).

> The legislature has vested police officers with authority to stop a vehicle when they have "articulable and reasonable grounds to suspect a violation of the Vehicle Code." 75 Pa.C.S.A. § 6308(b).

> If the alleged basis of a vehicular stop is to permit a determination of whether there has been compliance

with the Motor Vehicle Code of this Commonwealth, it is encumbent [sic] upon the officer to articulate specific facts possessed by him, at the time of the questioned stop, which would provide probable cause to believe that the vehicle of the driver was in violation of some provision of the Code.

*Commonwealth v. Slonaker,* 795 A.2d 397, 400 (Pa.Super.2002), *quoting Whitmyer, supra,* at 550, 668 A.2d at 1116.

¶ 5 The Commonwealth relies primarily on *Gleason, supra, Slonaker, supra,* and *Commonwealth v. Mickley,* 846 A.2d 686 (Pa.Super.2004) in support of its position that Trooper Dziedzic had probable cause to stop the appellee. Appellant argues the appellee's driving herein was more erratic than that of defendants Gleason and Slonaker, and posed a danger to motorists. Appellant likens the facts of *Mickley* to those before us, and argues the facts with which we are faced are even more serious. Here, unlike the facts in *Mickley,* the offense occurred on a two lane highway with opposing traffic (as opposed to a four-lane road) and appellee actually crossed the double yellow line (as opposed to only the fog line) causing the opposing driver to shift right in his lane of travel.

¶ 6 At the February 26, 2004 suppression hearing, Trooper Dziedzic testified that on the night in question, at 2:00 a.m., he followed appellee's vehicle for at least 1.6 miles and during that stretch she crossed the double yellow and fog lines four times each, described by the trooper as a pattern. N.T., 2/26/04, at 7, 20, 26 & 27. Trooper Dziedzic couldn't state exactly how far across the line appellee traveled, only that it was less than 1/2 of her car. *Id.* at 8–9. On one occasion when she crossed the double yellow line, an oncoming car had to move right in its lane of travel, but took "no drastic evasive action." *Id.* at 10.

¶ 7 In *Garcia, supra,* an officer stopped a vehicle after he observed him "straddling" the fog line on two occasions, apparently in response to a vehicle approaching from the opposite direction. Acknowledging the abundant number of cases interpreting *Gleason* and turning on case-specific facts, the *Garcia* Court considered very recent cases and attempted clarification.

[D]eciding a matter under the *Gleason* standard is not an easy task. But a close reading of the *Gleason* rationale,[3] combined with careful attention to the facts of that case, can lead us to conclude that where a vehicle is driven outside the lane of traffic for just a momentary period of time and in a minor manner, a traffic stop is unwarranted. Thus, appellant Gleason's crossing of the berm line on two occasions for a second or two were [sic] inadequate to support a traffic stop, while appellant Lindblom's repeated weaving within his lane, coupled with his driving over the center double lines and a berm line four or five times, provided probable cause to support a lawful traffic stop.

3 The *Gleason* court directed that where the police initiate a traffic stop based on a safety hazard allegedly created by the driver, the police must possess "specific facts justifying the intrusion." *Gleason, supra,* 567 Pa. at 121, 785 A.2d at 988.

*Id.* at *11, 859 A.2d 820.

■ ¶ 8 Using *Garcia's* "momentary and minor" standard, we find there existed probable cause for Trooper Dziedzic to stop appellee's vehicle. He observed her for a minimum distance of 1.6 miles, and watched as she wove side to side four times, each time crossing the double yellow and fog lines, and once interfering with oncoming traffic. Based on this rea-

soning, we vacate the Order granting suppression and remand for trial or other proceedings in accordance with this Opinion.

¶ 9 Order vacated; case remanded.

¶ 10 Jurisdiction relinquished.