COMMONWEALTH of Pennsylvania, Appellant,

v.

Daniel ANDERSON, Appellee.

Superior Court of Pennsylvania.

Argued May 24, 2005.
Filed Dec. 8, 2005.

---

Alisa R. Hobart, Asst. Dist. Atty., Reading, for Com., appellant.

BEFORE: STEVENS, GANTMAN, and KELLY, JJ.

OPINION BY STEVENS, J.:

¶ 1 The Commonwealth appeals the order entered in the Court of Common Pleas of Berks County suppressing the evidence seized from the stop of a vehicle driven by Appellee Daniel Anderson. On appeal, the Commonwealth's sole contention is that Police Officer Michael Quinn had probable cause to stop Appellee's vehicle, and, therefore, the suppression court erred in granting Appellee's pre-trial motion to suppress. We reverse and remand for further proceedings.

The standard employed by this Court when considering a Commonwealth appeal from an order granting suppression follows.

In reviewing the ruling of a suppression court, our task is to determine whether the factual findings are supported by the record. If so, we are bound by those findings. Where, as here, it is the Commonwealth who is appealing the decision of the suppression court, we must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted.

*Commonwealth v. Klopp*, 863 A.2d 1211, 1213 (Pa.Super.2004) (quotation and citations omitted).

¶ 2 The relevant facts and procedural history are as follows: Appellee was arrested for driving while under the influence of alcohol (DUI), driving on roadways laned for traffic, and careless driving,[1] and he filed a pre-trial motion seeking to suppress the evidence seized by the police, as well as a motion for writ of *habeas corpus*. On August 26, 2004, a pre-trial hearing was held, during which Police Officer Michael Quinn testified that he was on duty on May 17, 2003 at 2:30 a.m. when he observed Appellee's vehicle traveling at approximately ten miles an hour on a two-lane street with a thirty-five mile an hour speed limit. N.T. 8/26/04 at 4–5. Officer Quinn testified that he initially saw Appellee's vehicle straddling the double yellow lines, and as a result, he began following the vehicle. N.T. 8/26/04 at 6.

¶ 3 As Officer Quinn followed Appellee's vehicle, he observed the vehicle cross over the double yellow lines with both driver's side tires two or three times and then watched as the vehicle straddled the double yellow lines with half of the vehicle driving in the other lane for approximately two blocks. N.T. 8/26/04 at 7, 17. Officer

---

1. 75 Pa.C.S.A. §§ 3731(a)(1), 3309, and 3714.

Quinn specifically testified that Appellee's vehicle was "dead center" on the two-lane street for approximately two blocks. N.T. 8/26/04 at 7. While Appellee was driving "dead center" of both lanes of travel, Officer Quinn observed at least one other vehicle on the street. N.T. 8/26/04 at 7–8. Officer Quinn testified that oncoming traffic would have needed to swerve to get out of Appellee's path. N.T. 8/26/04 at 9. Officer Quinn observed Appellee's vehicle "come to a dead stop in the middle of the road" at the intersection of Main Street and Beach Street; there was no stop sign or traffic signal at this intersection. N.T. 8/26/04 at 9, 18–19.

¶ 4 Officer Quinn watched as Appellee sat a few seconds, turned on his turn signal, made a right turn onto Beach Street, and traveled one block to the intersection of Beach and Locust Streets, at which time Appellee stopped his vehicle at the stop sign for approximately thirty seconds to one minute. N.T. 8/26/04 at 9, 19. Officer Quinn saw Appellee drive to the next intersection, which was at Locust and Linden Streets, and stop his vehicle, even though there was no stop sign or traffic signal. N.T. 8/26/04 at 9, 21. Appellee turned left onto Linden Street and traveled one block to Oak Street, where Appellee sat for approximately thirty seconds to one minute. N.T. 8/26/04/ at 9–10. Officer Quinn specifically testified that at each intersection, with or without a stop sign, Appellee stopped his vehicle for approximately thirty seconds to one minute, even though there was no traffic impeding his travel. N.T. 8/26/04 at 9–10.

¶ 5 At this point, Officer Quinn believed Appellee was driving while under the influence of alcohol or a controlled substance, so he activated his cruiser's emergency lights. N.T. 8/26/04 at 13. In response, Appellee stopped his vehicle in a "cock-eyed-type position" next to the curb. N.T. 8/26/04 at 10. Officer Quinn approached Appellee, who told Officer Quinn he was attempting to return to his house after having a few beers with friends after work. N.T. 8/26/04 at 10, 14. Officer Quinn testified that a strong odor of alcohol emanated from the vehicle, Appellee's eyes were blood-shot, Appellee's speech was slurred, and Appellee refused all requests for testing. N.T. 8/26/04 at 11–12.

¶ 6 At the conclusion of the suppression hearing, by order entered on November 19, 2004, the court granted Appellee's motion to suppress but denied his motion for writ of *habeas corpus*. The Commonwealth filed a timely appeal alleging that the lower court's ruling substantially handicaps the prosecution. The lower court ordered the Commonwealth to file a statement pursuant to Pa.R.A.P. 1925(b), the Commonwealth filed the requested statement, and the lower court filed a Pa.R.A.P. 1925(a) opinion concluding that the Commonwealth failed to demonstrate sufficient probable cause for Officer Quinn to stop Appellee's vehicle. We conclude the lower court's factual findings are supported by the record; however, we disagree with the lower court's legal conclusions based thereon.

¶ 7 Section 6308(b) of the Vehicle Code allows police officers to stop a vehicle if they have "articulable and reasonable grounds to suspect a violation" of the Vehicle Code. 75 Pa.C.S.A. § 6308(b).[2]

---

2. This Subsection was amended on September 30, 2003, effective February 1, 2004, and now reads, in pertinent part: "**(b) Authority of police officer.**-Whenever a police officer...has a reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle...." 75 Pa.C.S.A. § 6308(b) (emphasis in original). "As amended, the statute lowered the quantum of cause an officer must possess from 'articulable and

If the alleged basis of a vehicle stop is to permit a determination whether there has been compliance with the Motor Vehicle Code of this Commonwealth, it is [i]ncumbent upon the officer to articulate specific facts possessed by him, at the time of the questioned stop, which would provide probable cause to believe that the vehicle or the driver was in violation of some provision of the Code.

*Commonwealth v. Slonaker,* 795 A.2d 397, 400 (Pa.Super.2002) (*quoting Commonwealth v. Whitmyer,* 542 Pa. 545, 550, 668 A.2d 1113, 1116 (1995)). As the Supreme Court explained in *Whitmyer, supra,* the statutory standard of "articulable and reasonable grounds" is the same as "probable cause."

¶8 "Probable cause does not require certainty, but rather exists when criminality is one reasonable inference, not necessarily even the most likely inference." *Commonwealth v. Lindblom,* 854 A.2d 604, 607 (Pa.Super.2004) (citation omitted).

Our courts recognize that while the Commonwealth has an interest in enforcing rules designed to maintain safety on our roads, an individual does not lose all reasonable expectation of privacy when he takes to the highway in a vehicle. [As indicated,] [a] police officer must have specific facts justifying the intrusion.

*Slonaker,* 795 A.2d at 400 (*citing Commonwealth v. Gleason,* 567 Pa. 111, 785 A.2d 983 (2001)).

¶9 In *Gleason, supra,* the Supreme Court addressed the issue of assessing when an officer has sufficient indicia of erratic driving to give the officer probable cause to stop a vehicle. Specifically, the defendant in *Gleason* was followed by a police officer for one quarter of a mile and, over that distance, the officer observed the defendant's vehicle cross the solid fog line two or three times. The Supreme Court concluded that "[g]iven the early morning hour, the fact that there was no other traffic on the roadway and the rather momentary nature of [the] defendant's vehicle crossing the fog line..., the officer erred in believing he had justification to stop [the] defendant's vehicle." *Gleason,* 785 A.2d at 985–986.

¶10 Since *Gleason's* publication, this Court has applied its holding to the myriad fact patterns that come before us in the context of traffic stops. Based on the specific facts presented, stops of defendants' vehicles have been upheld on several occasions. For example, in *Commonwealth v. Chernosky,* 874 A.2d 123 (Pa.Super.2005), an *en banc* panel of this Court recently held that the stop of the defendant's vehicle was supported by probable cause to suspect that the defendant was driving while under the influence of alcohol when the officer observed the defendant drive her vehicle from the roadway and nearly strike a telephone pole that was on the shoulder, travel across the double yellow lines, and swerve back over to the right side of the road on more than one occasion. The *en banc* panel specifically held that the defendant's actions were not equivalent to fleeting transgressions and that she creat-

reasonable grounds' to 'reasonable suspicion.' 75 Pa.C.S.A. § 6308(b)." *Commonwealth v. Cook,* 865 A.2d 869, 873 n. 1 (Pa.Super.2004) (emphasis omitted). Moreover, on November 2, 2005, a panel of this Court concluded that the amended statute is constitutional and reasonable suspicion is the standard to be used when an officer stops a vehicle to investigate whether a driver is operating under the influence of alcohol. *Commonwealth v. Sands,* 887 A.2d 261 (Pa.Super.2005). The amended version of Subsection 6308(b) is inapplicable to the case *sub judice* since the stop of Appellee's vehicle occurred on May 17, 2003, prior to the effective date of the amendment.

ed a clear risk to oncoming traffic and herself. "Given the length of time and distance, public risk was created even though [the officer] could not recall specifically seeing other vehicles on the road." *Id.* at 128.

¶ 11 In *Commonwealth v. Cook*, 865 A.2d 869 (Pa.Super.2004), a panel of this Court held that the police had probable cause to stop the defendant's vehicle when an on-duty officer received information from an off-duty officer that the defendant was driving in an erratic manner. Specifically, the off-duty officer observed the defendant travel into the parking lane, nearly striking the curb, and cross the fog line two or three times. The on-duty officer then followed the defendant's vehicle for approximately one mile and observed him drive over the fog line three times then rapidly jerk into his lane of travel. In upholding the stop, the panel noted that, unlike in *Gleason*, the defendant in *Cook* had crossed the fog line by several feet and not several inches, and the on-duty officer had followed the defendant for one mile knowing that the defendant had already been observed driving erratically by the off-duty officer. Furthermore, the panel concluded that the defendant's unsafe action of jerking the vehicle back into his lane of travel indicated that the defendant had inadvertently crossed the fog line and anxiously sought to remedy the situation.

¶ 12 In *Commonwealth v. Klopp*, 863 A.2d 1211 (Pa.Super.2004), a panel of this Court held that sufficient probable cause existed where the police saw the defendant's vehicle weave over the double yellow lines and fog line four times over a course of one and one-half miles. During the fourth time, a vehicle in the oncoming lane of travel moved to the right to avoid the defendant's vehicle. The panel specifi-

cally concluded that the offense was more than "momentary and minor" in nature.

¶ 13 In *Commonwealth v. Lindblom*, 854 A.2d 604 (Pa.Super.2004), a panel of this Court concluded that the police had probable cause to stop the defendant's vehicle where the defendant crossed the center double yellow lines four or five times, straddled the double yellow lines, and crossed the berm line four or five times. The panel made this conclusion even though opposing traffic was not present during the entire time the defendant was driving, noting that "a motorist may be stopped for reckless driving even if the only concern is for the motorist's own safety." *Id.* at 608 (citation omitted).

¶ 14 In *Commonwealth v. Mickley*, 846 A.2d 686 (Pa.Super.2004), a panel of this Court concluded that the stop of the defendant's vehicle was proper where the police followed the defendant's vehicle and observed, during the last three-quarters of a mile, that the defendant weaved within her lane of travel and crossed over onto the berm four times. While weaving, the defendant encountered several vehicles traveling in the opposite direction. The panel concluded that the defendant presented a clear hazard to herself and others.

¶ 15 In *Commonwealth v. Slonaker*, 795 A.2d 397 (Pa.Super.2002), a panel of this Court held that an officer had probable cause to suspect a driver was intoxicated, and thus, was justified in stopping the defendant's vehicle, when the officer observed the defendant's vehicle fully cross the white fog line three times during a five mile stretch, weave numerous times over the double yellow lines and the white fog line, weave side to side continuously in his lane of travel, and vary his speed between forty and sixty miles per hour. The panel specifically concluded that the defendant's continuous weaving over a file mile stretch of road, coupled with his acceleration and deceleration, led to the conclusion that the

defendant's driving was significantly less benign than the driving in *Gleason*.[3]

¶ 16 Applying the precedent discussed *supra*, we conclude that the facts in the case *sub judice* are akin to those cases where probable cause existed to execute a traffic stop. Specifically, the transgressions observed by Officer Quinn were not "momentary or minor," were significantly less benign than those in *Gleason*, and gave Officer Quinn sufficient probable cause to believe Appellee was driving while under the influence. As indicated, Officer Quinn followed Appellee on numerous two-lane streets for approximately five city blocks. During this time, Appellee straddled the double yellow lines for a full two blocks in such a manner that oncoming traffic would be required to swerve to avoid Appellee's vehicle. Furthermore, Appellee repeatedly stopped his vehicle for an inordinate and inexplicable amount of time without the presence of traffic signals or stop signs. By coming to unexpected, complete stops in a lane of travel, particularly while shrouded in darkness, Appellee certainly created a clear hazard to himself and others. Therefore, based on *Gleason* and its progeny, we conclude the stop of Appellee's vehicle was lawful and that suppression was unwarranted.

¶ 17 Reversed; Remanded; Jurisdiction Relinquished.

¶ 18 GANTMAN, J. files a concurring and dissenting opinion.

## CONCURRING AND DISSENTING OPINION BY GANTMAN, J.:

¶ 1 With respect to the majority's comment on our legislature's changes to the statutory language of 75 Pa.C.S.A § 6308(b), effective February 1, 2004, I note the amended provision now reads: "Whenever a police officer is engaged in a systematic program of checking vehicles or drivers **or has a reasonable suspicion** that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title." 75 Pa.C.S.A. § 6308(b) (emphasis added). The United States Supreme Court in *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), however, made clear that the stop of an automobile and the detainment of its occupants constitutes a "seizure" within the meaning of the Fourth and Fourteenth Amendments, even if the purpose of the stop is limited and the resulting detention quite brief. Therefore, the Court reasoned, "when there is not **probable cause** to believe that a driver is violating any one of the multitude of applicable traffic and equipment regulations—or other articula-

---

**3.** On some occasions, however, this Court has refused to find the police had sufficient probable cause to stop a defendant's vehicle. For instance, in *Commonwealth v. Garcia*, 859 A.2d 820 (Pa.Super.2004), a panel of this Court concluded that the police lacked probable cause to stop the defendant's vehicle when the officer observed the defendant drive over the right berm line two times, each time maneuvering in response to other oncoming vehicles, and the conduct took place over a two block area. The panel specifically concluded that "where a vehicle is driven outside the lane of traffic for just a momentary period of time and in a minor manner, a traffic stop is unwarranted." *Id.* at 823. Moreover, in *Commonwealth v. Battaglia*, 802 A.2d 652 (Pa.Super.2002), a panel of this Court concluded that an officer's perception that a defendant was driving erratically because he weaved within his lane, drove five to ten miles per hour under the speed limit, and crossed over the white fog line was not sufficient probable cause to stop the defendant's vehicle.

ble basis amounting to reasonable suspicion that the driver **is unlicensed or his vehicle unregistered**—we cannot conceive of any legitimate basis upon which a patrolmen could decide that stopping a particular driver for a spot check would be more productive than stopping any other driver." *Id.* at 661, 99 S.Ct. at 1400, 59 L.Ed.2d at 672 (footnote omitted). Our Supreme Court in *Whitmyer* and later in *Gleason* referenced *Prouse* directly in their discussion of probable cause as the appropriate standard for vehicle stops. As such, the propriety of the legislative revision is subject to some debate. In any event, I agree with the majority that the revised statute is irrelevant to the disposition of the present case, where Appellant's offense occurred on May 17, 2003, before the effective date of the amended statute.

¶ 2 Regarding the facts of the instant case, Office Quinn stopped Appellee based upon 75 Pa.C.S.A. § 3309, which in relevant part provides:

### § 3309. Driving on roadways laned for traffic

Whenever any roadway has been divided into two or more clearly marked lanes for traffic the following rules in addition to all others not inconsistent therewith shall apply:

(1) **Driving within single lane.**—A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety.

75 Pa.C.S.A. § 3309(1). The facts as presented implicate only subsection (1), which allows for some latitude in practicability. *See id.*

¶ 3 Officer Quinn also stopped Appellee based upon 75 Pa.C.S.A. § 3714, the relevant version of which states:

### § 3714. Careless driving

Any person who drives a vehicle in careless disregard for the safety of persons or property is guilty of careless driving, a summary offense.

75 Pa.C.S.A. § 3714.[4] The legislature included "careless driving" on the continuum of offenses "to cover driving behavior that is increasingly divorced from prudent driving behavior." *See Commonwealth v. Greenberg,* 885 A.2d 1025, 1027 (2005). The offense of careless driving has two elements: "an *actus reus*—driving a vehicle; and a *mens rea*—careless disregard. There is no causation or particular result required by the statute." *Commonwealth v. Wood,* 327 Pa.Super. 351, 475 A.2d 834, 836 (1984) (stating "careless disregard" is equivalent to culpable negligence). As this Court has explained:

The *mens rea* of... "careless disregard," implies "less than willful or wanton conduct...[but]...more than ordinary negligence or the mere absence of care under the circumstances...."

*Matter of Huff,* 399 Pa.Super. 574, 582 A.2d 1093, 1097 (1990) (*en banc*), *aff'd,* 529 Pa. 442, 604 A.2d 1026 (1992).[5] "The lan-

---

4. The careless driving statute was amended by making the cited text into subsection (a) and adding subsections (b) through (d); the new version went into effect on May 9, 2005, after Appellee's stop, and does not apply to this case.

5. In *Huff* and *Wood,* the charge was "reckless driving," but the *mens rea* under the pertinent statute at that time was "careless disregard." The offense of reckless driving now appears at 75 Pa.C.S.A. § 3736 and requires "willful or wanton disregard for the safety of persons or property." *See* 75 Pa.C.S.A. § 3736(a). The new statutes denote a distinct difference as to the intent requirement, with careless driving requiring a lesser intent than reckless driving. Nevertheless, the analysis of the *mens rea* of "careless disregard" provided in *Huff* and *Wood* remains intact.

guage 'careless disregard,' as used in this statute, set the level of culpability of the statutory offense at less than willful and wanton conduct, but more than ordinary negligence or the mere absence of care under the circumstances." *Commonwealth v. Cathey*, 435 Pa.Super. 162, 645 A.2d 250, 251 (1994). *See, e.g., Commonwealth v. Glassman*, 359 Pa.Super. 230, 518 A.2d 865, 869 (1986), *appeal denied*, 515 Pa. 574, 527 A.2d 535 (1987) (holding evidence that accused drove his car on wrong side of street, through stop signs, with no lights on, and at high rates of speed demonstrated total disregard for all rules of safety and exhibited shocking indifference to persons or other vehicles during his flight from police and also demonstrated careless disregard for all vehicles parked along streets through which police chased accused).

¶ 4 Section 302 of the Crimes Code sets for the general requirements of criminal culpability in pertinent part as follows:

§ 302. **General requirements of culpability**

\* \* \*

(b) **Kinds of culpability defined.—**

\* \* \*

(4) A person acts negligently with respect to a material element of an offense when he should be aware of substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that the actor's failure to perceive it, considering the nature and intent of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.

18 Pa.C.S.A. § 302(b)(4). "The negligence required to merit criminal sanctions under

Section 302 is certainly a heightened deviation from the standard of care applicable when civil tort liability is at issue, and it may indeed be convenient to refer to this heightened level of conduct as 'criminal negligence,' even though the Code does not employ that terminology." *Commonwealth v. Huggins*, 575 Pa. 395, 404, 836 A.2d 862, 867 (2003), *cert. denied*, 541 U.S. 1012, 124 S.Ct. 2073, 158 L.Ed.2d 624 (2004) (holding *prima facie* case of **recklessness** for charge of involuntary manslaughter, where defendant did more than fall asleep at the wheel; he allowed himself to fall asleep while driving van filled to over-capacity with children who were not restrained with safety belts; defendant was also driving 23 m.p.h. in excess of posted 55 m.p.h. speed limit, when he fell asleep).

¶ 5 Following careful review of the transcript of the suppression hearing, I conclude the trial court gives a more accurate rendition of facts as revealed in the suppression hearing testimony:

Officer Quinn testified that when he first followed [Appellee's] vehicle on Main Street there was on other vehicle **behind** [the officer]. However, this is the only testimony regarding a third vehicle on the road and there is no evidence that [Appellee's] driving posed a hazard to this vehicle. The officer saw no other vehicular traffic and said, "There was nothing that was coming towards us." [Officer Quinn] confirmed on cross-examination that there was no on-coming traffic as he followed [Appellee] on [East] Main Street. [Officer Quinn] also said that as [Appellee] was driving on Beach Street there was no traffic in the opposing lane.

\* \* \*

There is no evidence that [Appellee's] driving behavior posed a hazard to other

vehicles on the roadway especially where there were no vehicles in the opposing lanes of traffic on West Main and Beach Streets.

(Trial Court Opinion, dated January 10, 2005, at 2–3) (emphasis added). Additionally, the suppression hearing testimony revealed Appellee was driving well **below** the speed limit, and there were no parked cars on the roads. Even when Appellee went over the center line on East Main Street, "there was still sufficient room for vehicles to travel in both directions and park along both sides of the street." (N.T. Suppression Hearing, 8/26/04, at 18). The suppression court found no evidence of a safety hazard, citing 75 Pa.C.S.A. § 3309, which I think is a conclusion of **fact**, supported by the record. *See Klopp, supra.*

¶ 6 Moreover, there was no evidence Appellee exhibited the kind of "careless disregard" (culpable negligence) for the safety of persons or property that would provide Officer Quinn with probable cause to execute a traffic stop on the basis of Section 3714. *See* 75 Pa.C.S.A. § 3714; *Cathey, supra; Wood, supra.*

¶ 7 Since *Gleason* and *Commonwealth v. Baumgardner,* 568 Pa. 324, 796 A.2d 965 (2002), this Court continues to review the numerous fact patterns in traffic stop cases **largely** by comparing the fact pattern of one case to the fact pattern of another case, which frequently leads to blurry analysis and inconsistent decisions. Instead, we should follow our Supreme Court's example and review the activity alleged in light of the statutes involved, so we can reach more reliable results. *See Gleason, supra.*

¶ 8 Under the applicable standard and scope of review, as well as the facts in light of the relevant motor vehicle statutes involved in this case, I would affirm the suppression court's order, granting Appel-

lant's omnibus pre-trial suppression motion. Accordingly, I dissent.