# Commonwealth v. Brodhead

C.P. of Berks County, No. 0636-2014

*Justin Bodor*, for Commonwealth.
*Jay M. Nigrini*, for defendant.

BOCCABELLA, *J.*, July 11, 2014—

### FINDINGS OF FACT

1. On November 10th, 2013, at approximately 2:46 a.m., Officer Kevin Dale Mickle of the Hamburg Borough Police Department in Berks County, was on patrol traveling south bound on Route 61.

2. In Officer Mickle's report, he said he observed a black SUV cross over the center dotted yellow lines twice (there was no opposing traffic), and crossed over the white berm line once. Officer Mickle initiated a traffic stop.

### CONCLUSIONS OF LAW

1. "Where a defendant files a motion to suppress, the burdens of production and persuasion are on the

Commonwealth to prove the challenged evidence was not obtained in violation of the defendant's rights." *Commonwealth v. West*, 834 A.2d 625 at 629 (Pa. Super. 2003), citing *Commonwealth v. Wilmington*, 729 A.2d 1160 (Pa. Super. 1999); *See also* Pa.R.Crim.P. 581(H).

2. Section 6308(b) of the Motor Vehicle Code provides:

Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa. C.S.A. § 6308(b).

3. "Thus, when an officer has reasonable suspicion a violation of the Vehicle Code is occurring or has occurred, he may interrupt the privileged operation of a vehicle on the public highways and stop the vehicle for the investigative purposes stated therein." *Commonwealth v. Chase*, 960 A.2d 108, 112 (Pa. 2008) citing 75 Pa. C.S.A. § 6308(b).

4. "To establish grounds for 'reasonable suspicion' … the officer must articulate specific observations which, in conjunction with reasonable inferences derived from these observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and the person he stopped was involved in that activity." *Commonwealth v. Little*, 903 A.2d 1269, 1272 (Pa. Super. 2006) citing *Commonwealth v. Bennet*, 827 A.2d 469, 477

(Pa. Super. 2003) (citing *Commonwealth v. Cook*, 558 Pa. 50, 735 A.2d 673, 676 (1999)).

5. "In order to determine whether the police had a reasonable suspicion, the totality of the circumstances-the whole picture-must be considered." *In the Interest of D.M.*, 781 A.2d 1161, 1163 (Pa. 2001) citing *United States v. Cortez*, 449 U.S. 411, 417 (1981).

6. In making this determination, we must give "due weight ... to the specific reasonable inferences [the police officer] is entitled to draw from the facts in light of his experience." *Commonwealth v. Cook*, 735 A.2d 673, 676 (Pa.1999) quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968).

7. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, "[e]ven a combination of innocent facts, when taken together, may warrant further investigation by the police officer." *Commonwealth v. Cook*, 735 A.2d 673, 676 (Pa.1999) quoting *Terry v. Ohio*, 392 U.S. 1, 22 (1968).

8. "Reasonable suspicion sufficient to stop a motorist must be viewed from the standpoint of an objectively reasonable police officer." *Commonwealth v. Chase*, 960 A.2d 108, 120 (Pa. 2008) citing *Ornelas v. United States*, 517 U.S. 690, 696 (1996).

9. "While it is argued the lesser standard [reasonable suspicion] will allow a vehicle stop to be made based on pretextual motives, the United States Supreme Court made clear that case law 'foreclose[s] any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved.'" *Commonwealth v. Chase*, 960 A.2d 108, 120

(Pa. 2008) citing *Whren v. United States*, 517 U.S. 806, 813 (1996); *see also Commonwealth v. Foglia*, 979 A.2d 357, 361-62 (Pa. Super. 2009) (stating that observations made after the officer intends to stop the defendant can be used to support their actions).

10. "In other words, if police can articulate a reasonable suspicion of a Vehicle Code violation, a constitutional inquiry into the officer's motive for stopping the vehicle is unnecessary." *Commonwealth v. Chase*, 960 A.2d 108, 120 (Pa. 2008).

11. "Probable cause to arrest exists when the facts and circumstances within the police officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Commonwealth v. Williams*, 941 A.2d 14, 27 (Pa. Super. 2008) quoting *Commonwealth v. Dommel*, 885 A.2d 998, 1002 (Pa. Super. 2005), *appeal denied*, 920 A.2d 831 (Pa. 2007) (quoting *In re C.C.J.*, 799 A.2d 116, 121 (Pa. Super. 2002))

12. "Probable cause exists if there are facts available at the time of apprehension which would justify a reasonable man in the belief that a crime has been or is about to be committed and the person arrested probably is the perpetrator." *Commonwealth v. Gambit*, 418 A.2d 554, 557 (Pa. Super. 1980).

13. "[P]robable cause does not require certainty, but rather exists when criminality is one reasonable inference, not necessarily even the most likely inference." *Commonwealth v. Cook*, 865 A.2d 869, 875 (Pa. Super. 2004) quoting *Commonwealth v. Lindblom*, 854 A.2d 604, 607 (Pa. Super. 2004).

14. "We evaluate probable cause by considering all relevant facts under a totality of circumstances analysis." *Commonwealth v. Hernandez*, 935 A.2d 1275, 1284 (Pa. 2007) citing *Commonwealth v. Luv*, 735 A.2d 87, 90 (Pa. 1999) (citing *Commonwealth v. Gray*, 503 A.2d 921 (Pa. 1985)).

15. "Where a defendant files a motion to suppress, the burdens of production and persuasion are on the Commonwealth to prove the challenged evidence was not obtained in violation of the defendant's rights." *Commonwealth v. West*, 834 A.2d 625 at 629 (Pa. Super. 2003), citing *Commonwealth v. Wilmington*, 729 A.2d 1160 (Pa. Super. 1999); *See also* Pa.R.Crim.P. 581(H).

75 Pa.C.S.A. § 3309(1). Driving on roadways laned for traffic.

Whenever any roadway has been divided into two or more clearly marked lanes for traffic the following rules in addition to all others not inconsistent therewith shall apply:

(1) Driving within single lane. — A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety.

(2) Three lane roadways. — Upon a roadway which is divided into three lanes and provides for two-way movement of traffic, a vehicle shall not be driven in the center lane except when overtaking and passing another vehicle traveling in the same direction when the center lane is clear of traffic within a safe distance, or in preparation for making a left turn, or where the center lane is allocated exclusively to traffic moving in the same

direction that the vehicle is proceeding and the allocation is designated by official traffic-control devices.

(3) Lanes limited to specific use. — Official traffic-control devices may be erected to restrict the use of specified lanes to specified classes or types of traffic or vehicles, including multioccupant vehicles or car pools, and drivers of vehicles shall obey the directions of every such device.

(4) Prohibitions against changing lanes. — Official traffic-control devices may be installed prohibiting the changing of lanes on a section of roadway and drivers of vehicles shall obey the directions of every such device.

75 Pa.C.S.A. § 3301(a). Driving on right side of roadway.

(a) General rule. — Upon all roadways of sufficient width, a vehicle shall be driven upon the right half of the roadway except as follows:

(1) When overtaking and passing another vehicle proceeding in the same direction where permitted by the rules governing such movement.

(2) When an obstruction exists making it necessary to drive to the left of the center of the roadway, provided the driver yields the right-of-way to all vehicles traveling in the proper direction upon the unobstructed portion of the roadway within such distance as to constitute a hazard.

(3) When and where official traffic-control devices are in place designating a lane or lanes to the left side of the center of the roadway for the movement indicated by the devices.

(4) Upon a roadway restricted to one-way traffic.

(5) When making a left turn as provided in sections 3322 (relating to vehicle turning left) and 3331 (relating to required position and method of turning).

(6) In accordance with section 3303(a)(3) (relating to overtaking vehicle on the left).

21. In this case, Officer Mickle was on patrol traveling south bound on Route 61. While on duty, his attention was captured by a vehicle in front of him. Officer Mickle reported that the vehicle crossed the yellow dotted line in the roadway two (2) times and the berm line once within a one (1) mile distance. Officer Mickle conducted a traffic stop. When Officer Mickle initiated contact with the defendant, he smelled a strong odor of an alcoholic beverage emanating from his breath. He asked the defendant how much he had to drink. The defendant responded and said "one and a half beers (1½)."

After the conversation, Officer Mickle asked the defendant to step out of the vehicle to perform the Field Sobriety Tests. The defendant failed all tests that were given to him. The defendant was arrested for the suspicion of DUI. He was transported to a DUI center and the defendants legal blood alcohol content at the time of the incident was .16%

Officer Mickle *did not* have reasonable suspicion/probable cause to stop the vehicle based on his own observation of the vehicle crossing the "yellow" line two (2) times. It should be noted that the center dotted lines are *in fact white* and not yellow. In addition Route 61 is a four (4) lane highway. Two (2) lanes going south and two (2) lanes going north. The defendant was on the far right

(slow) lane traveling south. During his testimony, Officer Mickle *did not* say the vehicle did anything erratic while crossing the center dotted "white" line (no jerking motion). In *Gleason, supra,* the Supreme Court addressed the issue of assessing when an officer has sufficient indicia of erratic driving to give the officer probable cause to stop a vehicle. Specifically, the defendant in *Gleason* was followed by a police officer for one *quarter of a mile* and, over that distance, the officer observed the defendant's vehicle *cross* the solid fog line two or three times. The Supreme Court concluded that "given the early morning hour, the fact that there was *no other traffic on the roadway* and the rather *momentary nature* of the defendant's vehicle crossing the fog line..., the officer *erred* in believing he had justification to stop the defendant's vehicle." *Gleason,* 785 A.2d at 985-986. Just like in this situation, the defendant was traveling in the early morning hours and there was no testimony of any other traffic on the roadway. In addition, Officer Mickle cannot recall the timing or how much of a distance the tires crossed the white line. This would support that the crossing was rather "momentary and minor in nature." Therefore the defendant *did not* violate 75 Pa.C.S.A. § 3309(1) "Driving on roadways laned for traffic."

Moreover, in *Commonwealth v. Battaglia,* 802 A.2d 652 (Pa. Super. 2002), a panel of the court concluded that an officer's *perception* that a defendant was driving erratically because he weaved *within his lane,* drove five to ten miles per hour under the speed limit, and crossed over the white fog line was *not sufficient probable* cause to stop the defendant's vehicle. Furthermore, if the Commonwealth of Pennsylvania argues that the defendant's crossing of the white line constitutes erratic driving, it is *not per se* violation of the Vehicle Code so as to justify a traffic stop, and defendant's driving did not

pose a hazard to other motorists, *Commonwealth. v. Klopp* 863 A.2d 1211 (Pa. Super. 2004).

This court notes that 75 Pa.C.S.A. § 3309(1) of the Vehicle Code requires motorists to maintain a single lane "as nearly as practicable." Thus, the statutory language does not foreclose minor deviations from the traveling lane. In comparison, 75 Pa.C.S.A § 3301 provides that "a vehicle shall be driven on the *right half of the roadway*" subject to exceptions. The language of §3301 does not allow for unspecified deviations from the rule, and we need not analyze whether the defendant complied with this section.

In this case, the defendant was not speeding, weaving, or braking erratically. The defendant posed no safety hazard when his vehicle simply touched or crossed the white center line. The defendant *did not* even violate 75 Pa.C.S.A. § 3301(a). "Driving on right side of roadway." There is no evidence that he left his traveling lane into the opposing lane of travel. The defendant traveled southbound on the *"right half of the roadway"* and never crossed over to the northbound travel lane (opposing traffic). Therefore, at the time of the stop, Officer Mickle lacked specific facts, which would have provided reasonable suspicion to believe that the defendant was in violation of §3309(1) and §3301(a). Based on the totality of the circumstances, the court finds that the Commonwealth has not met its burden in establishing sufficient probable cause for the vehicle stop. Accordingly, the defendant's statements are inadmissible as evidence and the seizure did occur in violation of the defendant's constitutional rights (Article I, Section 8 of the Pennsylvania Constitution.)

22. The defendant's motion for suppression of the evidence is granted.

## ORDER

And now, this 11th day of July, 2014, it is hereby ordered that the defendant's motion for suppression of the evidence and statements is granted.