## Commonwealth v. Bogart

450

C.P. of Berks County, No. 01054-2014

*Daniel Troy*, for Commonwealth.
*James M. Polyak*, for defendant.

BOCCABELLA, *J.*, Sept. 26, 2014—

## FINDINGS OF FACT

1. On December 26th, 2013, at approximately 1:05 a.m., Trooper Ryan Monoski of the Pennsylvania State Police was on patrol traveling west bound on SR12, Muhlenberg Township in Berks County.

2. In Trooper Monoski's report, he said he observed an orange Chevrolet pickup truck cross the white fog line and center dotted line multiple times. Trooper Monoski initiated a traffic stop based on this observation.

3. The video evidence submitted by the Commonwealth, does not accurately describe the observations by Trooper Monoski. This court based its decision on the video and precedent case law.

## CONCLUSIONS OF LAW

1. "Where a defendant files a motion to suppress, the burdens of production and persuasion are on the Commonwealth to prove the challenged evidence was

not obtained in violation of the defendant's rights." *Commonwealth v. West*, 834 A.2d 625 at 629 (Pa. Super. 2003), citing *Commonwealth v. Wilmington*, 729 A.2d 1160 (Pa. Super. 1999); *See also* Pa. R.Crim.P. 581(H).

2. Section 6308(b) of the Motor Vehicle Code provides:

Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa. C.S.A. § 6308(b).

3. "Thus, when an officer has reasonable suspicion a violation of the Vehicle Code is occurring or has occurred, he may interrupt the privileged operation of a vehicle on the public highways and stop the vehicle for the investigative purposes stated therein." *Commonwealth v. Chase*, 960 A.2d 108, 112 (Pa. 2008) citing 75 Pa. C.S.A. § 6308(b).

4. "To establish grounds for 'reasonable suspicion' ... the officer must articulate specific observations which, in conjunction with reasonable inferences derived from these observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and the person he stopped was involved in that activity." *Commonwealth v. Little*, 903 A.2d 1269, 1272 (Pa. Super. 2006) citing *Commonwealth v. Bennet*, 827 A.2d 469, 477

(Pa. Super. 2003) (citing *Commonwealth v. Cook*, 558 Pa. 50, 735 A.2d 673, 676 (1999)).

5. "In order to determine whether the police had a reasonable suspicion, the totality of the circumstances-the whole picture-must be considered." *In the Interest of D.M.*, 781 A.2d 1161, 1163 (Pa. 2001) citing *United States v. Cortez*, 449 U.S. 411, 417 (1981).

6. In making this determination, we must give "due weight ... to the specific reasonable inferences [the police officer] is entitled to draw from the facts in light of his experience." *Commonwealth v. Cook*, 735 A.2d 673, 676 (Pa. 1999) quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968).

7. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, "[e]ven a combination of innocent facts, when taken together, may warrant further investigation by the police officer." *Commonwealth v. Cook*, 735 A.2d 673, 676 (Pa. 1999) quoting *Terry v. Ohio*, 392 U.S. 1, 22 (1968).

8. "Reasonable suspicion sufficient to stop a motorist must be viewed from the standpoint of an objectively reasonable police officer." *Commonwealth v. Chase*, 960 A.2d 108, 120 (Pa. 2008) citing *Ornelas v. United States*, 517 U.S. 690, 696 (1996).

9. "While it is argued the lesser standard [reasonable suspicion] will allow a vehicle stop to be made based on pretextual motives, the United States Supreme Court made clear that case law 'foreclose[s] any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers

involved.'" *Commonwealth v. Chase*, 960 A.2d 108, 120 (Pa. 2008) citing *Whren v. United States*, 517 U.S. 806, 813 (1996); *see also Commonwealth v. Foglia*, 979 A.2d 357, 361-62 (Pa. Super. 2009) (Stating that observations made after the officer intends to stop the defendant can be used to support their actions).

10. "In other words, if police can articulate a reasonable suspicion of a Vehicle Code violation, a constitutional inquiry into the officer's motive for stopping the vehicle is unnecessary." *Commonwealth v. Chase*, 960 A.2d 108, 120 (Pa. 2008).

11. "Probable cause to arrest exists when the facts and circumstances within the police officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Commonwealth v. Williams*, 941 A.2d 14, 27 (Pa. Super. 2008) quoting *Commonwealth v. Dommel*, 885 A.2d 998, 1002 (Pa. Super. 2005), *appeal denied*, 920 A.2d 831 (Pa. 2007) (quoting *In re C.C.J.*, 799 A.2d 116, 121 (Pa. Super. 2002)).

12. "Probable cause exists if there are facts available at the time of apprehension which would justify a reasonable man in the belief that a crime has been or is about to be committed and the person arrested probably is the perpetrator." *Commonwealth v. Gambit*, 418 A.2d 554, 557 (Pa. Super. 1980).

13. "[P]robable cause does not require certainty, but rather exists when criminality is one reasonable inference, not necessarily even the most likely inference." *Commonwealth v. Cook*, 865 A.2d 869, 875 (Pa. Super.

2004) quoting *Commonwealth v. Lindblom*, 854 A.2d 604, 607 (Pa. Super. 2004).

14. "We evaluate probable cause by considering all relevant facts under a totality of circumstances analysis." *Commonwealth v. Hernandez*, 935 A.2d 1275, 1284 (Pa. 2007) citing *Commonwealth v. Luv*, 735 A.2d 87, 90 (Pa. 1999) (citing *Commonwealth v. Gray*, 503 A.2d 921 (Pa. 1985)).

15. "Where a defendant files a motion to suppress, the burdens of production and persuasion are on the Commonwealth to prove the challenged evidence was not obtained in violation of the defendant's rights." *Commonwealth v. West*, 834 A.2d 625 at 629 (Pa. Super. 2003), citing *Commonwealth v. Wilmington*, 729 A.2d 1160 (Pa. Super. 1999); *See also* Pa. R.Crim.P. 581(H).

16. "In evaluating an accuser's entitlement to pre-trial habeas corpus relief, a trial court must determine whether there is sufficient evidence to make out a prima facie case that the defendant committed the crime with which he or she is charged." *Commonwealth v. Hock*, 728 A.2d 943, 945 (Pa. 1999); *See generally Commonwealth v. Rachau*, 670 A.2d 731, 733 n.5 (Pa. Commw. 1996) citing *Commonwealth v. Kowalek*, 647 A.2d 948, 949 (Pa. Super. 1994).

17. "A *prima facie* case of defendant's guilt exists, so as to satisfy Commonwealth's burden at pre-trial stage of criminal prosecution, when the Commonwealth produces evidence of each of the material elements of the crime charged and establishes sufficient probable cause to warrant the belief that the accused committed the offense." *Commonwealth v. Huggins*, 836 A.2d 862, 866 (Pa. 2003)

citing *Commonwealth v. McBride*, 595 A.2d 589, 591 (Pa. 1991) (citing *Commonwealth v. Wojdak*, 466 A.2d 991 (Pa. 1983)).

18. "The evidence need only be such that, if presented at trial and accepted as true, the judge would be warranted in permitting the case to go to the jury." *Commonwealth v. Marti*, 779 A.2d 1177, 1180 (Pa. Super. 2001).

19. "In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." *Commonwealth v. Schmohl*, --- A.2d ----, 2009 WL 1451451, filed May 26, 2009.

20. "[I]nferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect, and the evidence must be read in the light most favorable to the Commonwealth's case." *Commonwealth v. Marti*, 779 A.2d 1177, 1180 (Pa. Super. 2001) quoting *Commonwealth v. Owen*, 580 A.2d 412, 414 (Pa. Super. 1990).

75 Pa. C.S.A. § 3309(1). Driving on roadways laned for traffic.

Whenever any roadway has been divided into two or more clearly marked lanes for traffic the following rules in addition to all others not inconsistent therewith shall apply:

(1) Driving within single lane. — A vehicle shall be driven as *nearly as practicable entirely within a single* lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety.

(2) Three lane roadways. — Upon a roadway which is divided into three lanes and provides for two-way movement of traffic, a vehicle shall not be driven in the center lane except when overtaking and passing another vehicle traveling in the same direction when the center lane is clear of traffic within a safe distance, or in preparation for making a left turn, or where the center lane is allocated exclusively to traffic moving in the same direction that the vehicle is proceeding and the allocation is designated by official traffic-control devices.

(3) Lanes limited to specific use. — Official traffic-control devices may be erected to restrict the use of specified lanes to specified classes or types of traffic or vehicles, including multioccupant vehicles or car pools, and drivers of vehicles shall obey the directions of every such device.

(4) Prohibitions against changing lanes. — Official traffic-control devices may be installed prohibiting the changing of lanes on a section of roadway and drivers of vehicles shall obey the directions of every such device.

21. In this case, Trooper Monoski was on patrol traveling west bound on SR12. While on duty, his attention was on a vehicle in front of him. Trooper Monoski reported that the vehicle crossed the white dotted line on the roadway multiple times and the fog line. Trooper Monoski conducted a traffic stop.

Trooper Monoski *did not* have reasonable suspicion/ probable cause to stop the vehicle based on his own observation of the vehicle crossing the "white" line. It

should be noted that the video evidence admitted showed the defendant crossed the fog line once because the lane/fog line was expanding to create two lanes going west bound. In addition the video does not clearly show the defendant crossing the white dotted lines multiple times. Instead, it shows the defendant merely touching the white dotted line within his lane. The video depicts that the defendant's vehicle did not do anything erratic while touching the center dotted "white" line (no jerking motion). In *Gleason, supra*, the Supreme Court addressed the issue of assessing when an officer has sufficient indicia of erratic driving to give the officer probable cause to stop a vehicle. Specifically, the defendant in *Gleason* was followed by a police officer for one *quarter of a mile* and, over that distance, the officer observed the defendant's vehicle *cross* the solid fog line two or three times. The Supreme Court concluded that "given the early morning hour, the fact that there was *no other traffic on the roadway* and the rather *momentary nature* of the defendant's vehicle crossing the fog line..., the officer *erred* in believing he had justification to stop the defendant's vehicle." *Gleason*, 785 A.2d at 985-986. Just like in this situation, the defendant was traveling in the early morning hours and Trooper Monoski only followed him approximately 1/2 mile. The video evidence supports that the crossing/touching was rather "momentary and minor in nature." Therefore the defendant *did not* violate 75 Pa. C.S.A. § 3309(1) "Driving on roadways laned for traffic."

Moreover, in *Commonwealth v. Battaglia*, 802 A.2d 652 (Pa. Super.2002), a panel of the court concluded that an officer's perception that a defendant was driving erratically because he weaved *within his lane*, drove five to ten miles

per hour under the speed limit, and crossed over the white fog line was *not sufficient probable* cause to stop the defendant's vehicle. Furthermore, if the Commonwealth of Pennsylvania argues that the defendant's crossing of the white line constitutes erratic driving, it is *not per se* a violation of the vehicle code so as to justify a traffic stop, and defendant's driving did not pose a hazard to other motorists, *Commonwealth. v. Klopp* 863 A.2d 1211 (Pa. Super.2004).

This court notes that 75 Pa. C.S.A. § 3309(1) of the vehicle code requires motorists to maintain a single lane "*as nearly as practicable*." Thus, the statutory language does not foreclose minor deviations from the traveling lane. In comparison, 75 Pa. C.S.A § 3301 provides that "a vehicle shall be driven on the *right half of the roadway*" subject to exceptions. The language of §3301 does not allow for unspecified deviations from the rule, and we need not analyze whether the defendant complied with this section.

In this case, the defendant was not speeding, weaving, or braking erratically. The defendant posed no safety hazard when his vehicle simply touched or crossed the white center line. Therefore, at the time of the stop, Trooper Monoski lacked specific facts, which would have provided reasonable suspicion to believe that the defendant was in violation of §3309(1). Based on the totality of the circumstances, the court finds that the Commonwealth has not met its burden in establishing sufficient probable cause for the vehicle stop. Accordingly, the defendant's statements are inadmissible as evidence and the seizure did occur in violation of the defendant's constitutional rights (Article I, Section 8 of the Pennsylvania Constitution.)

22. The defendant's motion for suppression of the evidence is granted.

In this case, having determined that the vehicle stop was not proper, the court finds that the Commonwealth has not presented sufficient evidence to establish a prima facie case with respect to all counts.

23. The defendant's motion for writ of habeas corpus is granted.

## ORDER

And now, this 26th day of September, 2014, it is hereby ordered that the defendant's motion for suppression of the evidence and statements is granted. The defendant's motion for writ of habeas corpus is granted.